In re David Lee **MILEY,** Debtor.

**Susan R. Newcomb, Plaintiff,**

v.

**David Lee Miley, Defendant.**

**Bankruptcy No. 97–3262.**

United States Bankruptcy Court, N.D. Ohio.

Sept. 25, 1998.

Susan R. Newcomb, Bryan, OH, Charles C. Butler, Bryan, OH, for plaintiff.

David Lee Miley, West Unity, OH, Thomas Molitierno, Fayette, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint for Determination that Debts are Nondischargeable. This Court has reviewed the arguments of counsel, evidence presented at Trial, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debts at issue are nondischargeable to the extent determined in this Opinion.

### FACTS

The Plaintiff and the Defendant were once husband and wife. Prior to their marriage the parties executed an antenuptial agreement which prohibited either spouse from receiving spousal support in the event of a divorce. On September 11, 1995, the parties were granted a divorce pursuant to a Judgment Entry filed in the Court of Commons Pleas, Williams County, Ohio. In that judgment, entered after several days of hearing, the Court found the antenuptial agreement to be valid and binding as to all terms contained therein. The judgment entry also provided that she was entitled to one-half the value of an insurance agency acquired by the parties during their marriage. This value of half the business was determined to be Twenty Thousand Dollars ($20,000.00), and the Defendant was to pay Five Hundred Dollars ($500,00) per month towards this value, along with 10% interest. It is the dischargeability of this debt which is at issue in this case. The Defendant was allowed to retain this business, but since the divorce he has closed the business and lost his insurance license.

From October of 1995 through November of 1996 the Defendant made the Five Hundred Dollar ($500.00) monthly payments. Other than a payment in February of 1997, the Defendant made no more payments.

After the Defendant had stopped making payments, the Plaintiff returned to the Commons Pleas Court on a show cause motion asking that the Defendant be found in contempt. The Defendant appeared, but was not represented by counsel. On May 19, 1997, the Magistrate entered a Decision and Judgment Entry finding that the Defendant had failed to make all the payments for the months of January through April of 1997. The Magistrate found the Defendant in contempt of court, and sentenced him to ten days in the corrections center. However, the Magistrate also provided that the Defendant could purge himself of contempt by paying the Plaintiff the sum of Two Thousand Dollars ($2,000.00) plus interest on or before August 5, 1997. The Magistrate also ordered that all future payments shall be paid through the Williams County Child Support Enforcement Agency, and that all payments previously ordered are in the nature of spousal support and maintenance. The Magistrate also ordered that the payments be

made through a wage withholding. The Defendant contends herein that the $500.00 per month payments are not actually in the nature of support, and were only termed so by the Magistrate so that payments could be made via a wage withholding. Indeed, the Plaintiff testified at trial that she understood that the payments were not intended as support, but were a distribution of the value of the business.

The Defendant filed for Chapter 7 bankruptcy protection on May 27, 1997. The balance that Defendant owed on his obligation to the Plaintiff for half of the business is presently Fifteen Thousand Four Hundred Fifty-six and 55/100 Dollars ($15,456.55).

The Defendant testified that he has recently obtained employment at Pac–Van Leasing and Sales as a salesperson. He testified that he earned Seven Hundred Dollars ($700.00) net and One Thousand One Hundred Dollars ($1,100.0) gross from a recent bi-weekly paycheck. (This equates to about Twenty-eight Thousand Six Hundred Dollars ($28,600.00) per year). It appears that this income will steadily increase in the future as he gains sales expertise in the new field, and as clients become solidified. It is therefore reasonable to approximate at least Thirty Thousand Dollars ($30,000) per year income, which equates to One Thousand Five Hundred Ninety Dollars ($1,590.00) per month. Also, considering the Defendant's testimony and other evidence produced at trial, it is reasonable to presume that his income will grow by at least Five Thousand Dollars ($5,000.00) per year for at least the next two years. Finally, the testimony produced at trial shows that after the divorce, the Defendant received large amounts of monies from insurance commissions from the insurance business. The Defendant testified that these commission receipts totaled as much as Three Thousand Five Hundred Dollars ($3,500) to Four Thousand Dollars ($4,000) per month. Indeed, even he testified that he had a lot of income over the last two years and just "blew it." Accordingly, given the Defendant's disregard for his obligation to the Plaintiff, this Court finds Defendant's testimony as to his potential income to be less than completely credible.

The Defendant also testified as to his expenses. Some of these expenses relate to a lake cottage which Defendant intends to sell, and will therefore not be considered. The Defendant also claims to have recently separated from his present wife. In any event, this Court finds Defendant's reasonable monthly expenses to be as follows:

| | |
|---|---|
| Rent | $300.00 |
| Utilities: | |
| Electric | 50.00 |
| Heat | 75.00 |
| Telephone | 50.00 |
| Food | 200.00 |
| Clothing | 50.00 |
| Laundry/Dry Cleaning | 20.00 |
| Medical/Dental | 70.00 |
| Gasoline for auto | 150.00 |
| Insurance | |
| Renters | 20.00 |
| Auto | 50.00 |
| Newspapers/magazines | 20.00 |
| Maintenance: | |
| Auto | 50.00 |
| Auto payments: | 350.00 |
| Total monthly expenses | $1,455.00 |

The Plaintiff's income from employment in 1997 was approximately $12,840. She does have some money saved, totaling approximately $30,000.00. However, this Court agrees that due to the fact she was not a wage earner during the parties' marriage, she has little retirement savings possibilities. Accordingly, this Court will not consider her saving or interest therefrom in determining her present income.

This Court is also aware that the Williams County Child Support Enforcement Agency is presently holding $1,309.34 of monies collected from Defendant pursuant to the wage withholding, and is waiting this Court's determination of the issues herein.

### LAW

The Bankruptcy Code, 11 U.S.C. § 523, et al., provides, in pertinent part:

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

    (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a governmental unit unless—

    (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

    (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

## DISCUSSION

Determinations concerning the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(i). Thus, this case is a core proceeding.

■ The Plaintiff first brings this action under § 523(a)(5) of the Bankruptcy Code. The analytical framework for determining when obligations are actually in the nature of alimony, maintenance or support was provided by the Sixth Circuit in *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983), and succinctly restated by the Court in *In re Fitzgerald,* 9 F.3d 517 (6th Cir.1993). The four step analysis provides that:

First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. 715 F.2d at 1109–10. The burden of demonstrating that an obligation is in the nature of support is on the non-debtor. 715 F.2d at 1111.

*Fitzgerald* at 520.

■ The language of the parties' (or state court's) characterization of the loan assumption does not control. *Calhoun,* 715 F.2d at 1111. When determining whether an obligation is intended for support of a former spouse, the Court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. See also *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984) citing *In re Maitlen,* 658 F.2d 466 (7th Cir.1981). Typically, a property settlement is not affected by a change in the personal circumstances of the recipient spouse. *In the Matter of Albin,* 591 F.2d 94 (9th Cir.1979). The Bankruptcy Court's determination as to whether a loan assumption constitutes a nondischargeable support obligation is a factual finding only reviewable under the clearly erroneous standard. *Calhoun,* 715 F.2d at 1110; *Singer,* 787 F.2d at 1035.

In the case at bar, this Court finds that the $500.00 monthly payment at issue was not intended to be a spousal support obligation, notwithstanding the Williams County Court of Common Pleas Magistrate's characterization. The Judgment Entry of divorce upheld the parties antenuptial agreement, which provided for no support. The obligation was clearly created as division of the couple's business, not because the Plaintiff needed support. Indeed, the Plaintiff herself understood that the obligation to be a property settlement at the time of the divorce. Seen in this light, this Court agrees with the Defendant that the Magistrate's reclassification was for the purpose of providing for enforcement through wage withholding. At the time the obligation was created, it was simply a property settlement.

Alternatively, the Plaintiff argues that the debt is a nondischargeable property settlement pursuant to § 523(a)(15). Section 523(a)(15) was enacted as part of the Bankruptcy Reform Act of 1994, and applies to bankruptcy cases filed after October 22, 1994. *In re Woodworth,* 187 B.R. 174, 175 (Bankr.N.D.Ohio 1995). The creditor initially bears the burden of establishing that the debt is not a debt which is nondischargeable under § 523(a)(5), and that the debt was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. *In re Henderson,* 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). Upon such a showing by the objecting creditor, the burden of proof then shifts to the debtor to establish either an inability to pay under § 523(a)(1)(15)(A), *or* that a discharge would result in a benefit to the debtor that would outweigh the detriment to the plaintiff under § 523(a)(1)(15)(B). *Henderson* at 324; *Smither* at 107; *In re Carroll,* 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995).

This Court must first determine whether the Debtor has the ability to repay the debt pursuant to § 523(a)(15)(A). The Defendant's financial condition at the time of trial should be the starting point in making this determination. *Henderson,* 200 B.R. at 326; *Carroll,* 187 B.R. at 200; *Smither,* 194 B.R. at 108 (A court may consider facts and circumstances concerning a debtor's future earning potential, as well as his or her income as of the date of the trial in determining his or her ability to pay). If the debtor does not have the ability to repay the debt, this ends the matter and the debt is discharged under § 523(a)(15)(A). Even if the debtor does have the ability to repay the debt, the debtor could still obtain a discharge under § 523(a)(15)(B) if discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the debtor's former spouse or children.

Though the Defendant claims to not presently have the income to pay this debt, this Court finds that he does presently have a monthly surplus of approximately $130.00 per month or more. Indeed, this does not include the insurance commission checks he may still be receiving. It is also clear that his monthly income will increase in the future. However, a court should also consider the amount of the debt involved in determining whether a debtor has the ability to repay it. *Smither,* 194 B.R. at 108. In this case the debts at issue total over $15,-000.00. It has been held that under § 523(a)(15) a debt may be partially discharged according to the facts of the particular case, just as with determinations of dischargeability of student loan debts under § 523(a)(8). *Smither* at 109–110, following *In re Comisky,* 183 B.R. 883, 884 (Bankr. N.D.Cal.1995). This Court has found this practice equitable and pragmatic, and has adopted such a rule *In re Perkins,* 221 B.R. 186 (Bankr.N.D.Ohio 1998). However, before proceeding to a partial repayment analysis, this Court should first determine whether the Defendant can have the debt discharged in full under § 523(a)(15)(B). *Id.* Accordingly, this Court must proceed to a balancing of hardships.

It is clear from the language of the statute that when determining whether a debt is nondischargeable under § 523(a)(15)(B), a court must compare the standard of living of the debtor against the standard of living of his former spouse

and/or children to determine whether the debtor will "suffer more" by not receiving a discharge of the debts in question. *Smither*, 194 B.R. at 110, citing *In re Phillips*, 187 B.R. 363 (Bankr.M.D.Fla.1995). "[T]he best way to apply the 11 U.S.C. § 532(a)(15)(B) balancing test is to review the financial status of the debtor and the creditor and compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge." 194 B.R. at 111.

In this case the Court finds that the Defendant has not met his burden of showing that he is entitled to a discharge under § 523(a)(15)(B). The Plaintiff is presently earning approximately $13,000.00 per year. Though it is possible that she could increase her earnings somewhat, it appears unlikely that she could increase these earnings significantly. On the other hand, the Defendant is presently making approximately $30,000.00 per year, and this amount will increase in the future. Assuming any amount of reasonable expenses for Plaintiff, it is clear that Defendant has not shown that he will "suffer more" than Plaintiff if the debt is not discharged.

However, Defendant clearly does not have the ability to pay the present judgment all at once. Thus, we return to the partial repayment analysis as affecting Defendant's ability to repay under § 523(a)(15)(A). See *Smither*, 194 B.R. at 109. While it is clear that Defendant is not presently able to make the $500.00 per month payments, it nevertheless appears that he could presently make $100.00 per month payments in the first year, and $300.00 per monthpayments thereafter until the debt is paid.

This Court also finds that monies being held in the Williams County Child Support Enforcement Agency should be paid to the Plaintiff against the debt at issue herein, as they are not necessary for the Defendant's ongoing expenses. This Court will also note that its characterization of the debt at issue as not "in the nature of support" pertains only to determinations under Sections 523(a)(5) and (15) of the Bankruptcy Code. This Court makes no finding as to the effica-

cy of the Magistrate's May 19, 1997 decision that payments should be made through a wage withholding via the Williams County Child Support Enforcement Agency.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that Defendant's legal obligation to Plaintiff regarding the debt at issue herein is *NONDISCHARGEABLE* in the amount of Fifteen Thousand Four Hundred Fifty-six and 55/100 Dollars ($15,456.55), but that Defendant shall not be obligated to pay more than the sum of One Hundred Dollars ($100.00) every month, commencing in the month following the date of this Opinion, and continuing for a period of one year. After one year, payments shall increase to Three Hundred Dollars ($300.00) per month until the debt is repaid, with interest accruing at the rate of 10% per annum from the date of this Opinion.