In re Lewis E. MILLER, Debtor.

Nancy J. Miller, Plaintiff,

v.

Lewis E. Miller, Defendant.

No. 98–3224.

United States Bankruptcy Court, N.D. Ohio.

Jan. 31, 2000.

Patrick J. Keating, Akron, OH, for plaintiff.

William H. White, Lima, OH, for defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of a marital debt. At the Trial it was established that the debt at issue in this proceeding arose under the following circumstances:

The Plaintiff and the Defendant are former husband and wife, and during the Parties' marriage to one another, the Plaintiff owned and the Defendant operated a business by the name of Lew Miller Excavating. Once the Parties' marriage came to an end, however, the Defendant, through a separation agreement adopted in the Parties' divorce decree, was awarded sole title and interest in the excavating business, and in consideration thereof was also ordered to assume and hold the Plaintiff harmless on all debts and liabilities arising out of the operation of the business. Thereafter, the evidence presented at the Trial shows that the Defendant continued to operate his excavating business, and that by June of 1998, the Defendant, in order to obtain materials for the operation of his business, had accumulated a Seven Thousand Eight Hundred Forty-four and 60/100 dollars ($7,844.60) post-marital debt with the Crouse Lumber Do It Center (hereinafter Crouse Lumber Company). In contravention of the Parties' separation agreement, however, the Plaintiff, unbeknownst to her, was jointly liable

on this debt, and it is this potential liability which the Plaintiff now seeks to have determined nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

Section 523(a)(15) of the Bankruptcy Code provides that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

Proceedings brought pursuant to § 523(a)(15) are core proceedings over which this Court has subject matter jurisdiction. 28 U.S.C. § 157(b)(2)(I). Under § 523(a)(15), the creditor/spouse bears the initial burden of establishing that the debt at issue was incurred by the debtor in the course of a divorce or separation, or in connection with a separation agreement, divorce decree or other order of a court of record. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). Upon the

creditor/spouse meeting this requirement, the burden of proof then shifts to the debtor to establish either an inability to pay, or that a discharge would result in a benefit to the debtor which would outweigh the detrimental consequences to the creditor/spouse. *Melton v. Melton (In re Melton)*, 228 B.R. 641, 645 (Bankr. N.D.Ohio 1998). In this case, the Parties do not dispute that the Defendant's obligation to pay the Crouse Lumber Company debt arose from a separation agreement; thus, it is the Defendant's burden, to prove by a preponderance of the evidence, that one of the two exceptions to nondischargeability contained in § 523(a)(15) are applicable. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard used in dischargeability proceedings). The Court begins this analysis by examining whether the Defendant has the "ability to pay" the debt.

■■■ Under the "ability to pay" test contained in § 523(a)(15)(A) a court must first determine the amount, if any, of disposable income[1] that a debtor has available to pay the marital debt. *Barnes v. Barnes (In re Barnes)*, 218 B.R. 409, 411 (Bankr.S.D.Ohio 1998). In making this determination, the debtor's income and expenses are generally gauged from the time the trial is conducted; although, if the circumstances of the particular case so warrant, the Court may consider circumstances concerning a debtor's future earning potential. *Newcomb v. Miley (In re Miley)*, 228 B.R. 651, 656 (Bankr.N.D.Ohio 1998).

In this case, the Defendant, who is fifty-three (53) years old with no dependents, testified that he works approximately forty (40) hours per week as a union carpenter, making Eighteen and 96/100 dollars ($18.96) per hour. Accordingly, after factoring in a thirty percent (30%) deduction from the Defendant's gross pay for taxes, union dues, and other miscellaneous deductions, the Defendant's net monthly income is approximately Two Thousand One Hundred Twenty-three and 52/100 dollars ($2,123.52) per month. On the other side of the equation, the Court, after evaluating the evidence produced at trial, finds that the reasonable monthly expenses of the Defendant are as follows:

| | | |
|---|---|---|
| –Rent | $ 320.00 | –includes utilities |
| –Food | $ 150.00 | |
| –Car Payments | $ 230.00 | |
| –Auto Insurance | $ 40.00 | |
| –Gas | $ 100.00 | |
| –Health Insurance | $ 303.00 | |
| –Life Insurance | $ 25.00 | |
| –Clothing | $ 150.00 | |
| –Entertainment | $ 50.00 | |
| Total | $1,368.00 | |

Thus, the Defendant, for purposes of the "ability to pay" analysis, has a disposable income of approximately Seven Hundred Fifty-five dollars ($755.00) per month.

■■■ Next, after ascertaining the debtor's disposable income, a court must determine, after considering the total amount indebtedness involved, whether the debtor has a sufficient amount of disposable income available to pay the marital debt(s) within a reasonable amount of time. *Crossett v. Windom (In re Windom)*, 207 B.R. 1017, 1022 (Bankr. W.D.Tenn.1997). If the debtor does, then the debt is nondischargeable under § 523(a)(15)(A). In making this determination, however, a Court should be cautious of dedicating all the debtor's disposable income to repayment of the marital debt, as unexpected expenses, such as car repairs, may arise. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr. N.D.Ohio 1998). In addition, if the debtor has some disposable income available, but the debt is simply too large to expect the debtor to realistically pay the entire debt in a reasonable period of time, the Court may consider discharging a portion of the marital debt, if the circumstances of the

---

1. The Bankruptcy Code defines disposable income as that "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325(b)(2).

particular case would make it equitable to do so. *Melton*, 228 B.R. at 646.

▮ Applying the above requirements to the case sub judice, the Court cannot find that the Defendant has met his burden under subparagraph (A) of § 523(a)(15). Specifically, the Court notes that the Defendant, having a disposable income of Seven Hundred Fifty-five dollars ($755.00) per month, must only repay a debt of just under Eight Thousand dollars ($8,000.00). Thus, even if the Defendant were to only devote half of his disposable income to repayment of the marital debt, the debt would still be paid off in a relatively short period of time (i.e., under two years). Moreover, given the capaciousness of the Defendant's disposable income, the Court does not find that a partial discharge of the marital debt under § 523(a)(15)(A) is appropriate. Accordingly, the Court will now proceed to examine the Defendant's qualification for a discharge under subparagraph (B) of § 523(a)(15).

▮ Section 523(a)(15)(B) provides that a debtor/spouse is entitled to a discharge of a marital debt if discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the debtor's former spouse or children. In making this determination, this Court has previously held that the best way to apply the balancing test contained in § 523(a)(15)(B) is for a court to review the financial status of the debtor and the creditor, and then compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 191 (Bankr.N.D.Ohio 1998). This inquiry has often been referred to as the "who will suffer more" analysis. *See, e.g., In re Smither*, 194 B.R. 102, 110 (Bankr. W.D.Ky.1996); *Newcomb v. Miley (In re Miley)*, 228 B.R. 651, 656 (Bankr.N.D.Ohio 1998).

▮ In the case sub judice, the Court has already established that the Defendant's "take home" pay is approximately Two Thousand One Hundred Twenty-three and ⁵²/₁₀₀ dollars ($2,123.52) per month, of which over Seven Hundred dollars ($700.00) is available to the Defendant as disposable income. In addition, the evidence produced at trial, while not showing that the Defendant lives by any means a lavish life style, demonstrates that the Defendant, who shares his living expenses with a "lady friend," is able to comfortably afford all the basic amenities of life. By comparison, the evidence produced at Trial shows that the Plaintiff, who is single, is presently unemployed as the result of a recent move to take care of her sick father. In addition, according to the Plaintiff's statements at Trial, the following figures constitute an accurate depiction of her minimum monthly expenses:

| | | |
|---|---|---|
| –Rent | $ 320.00 | |
| –Food | $ 200.00 | |
| –Car Payments | $ 287.00 | |
| –Auto Insurance | $ 250.00 | (although in the near future could drop considerably) |
| –Health Insurance | $ 170.00 | |
| | $1,227.00 | |

To meet these living expenses, the Plaintiff testified that she currently has Ten Thousand Dollars ($10,000.00) in savings, and that she is actively searching for employment in the local area as a "dietician," from which the expected income would be approximately Eleven dollars ($11.00) per hour. (As of the date of the trial, however, the Plaintiff had no firm job prospects.) Additional evidence put forth at the Parties' Trial also demonstrated that the Plaintiff does not engage in an ostentatious type lifestyle.

Thus, after evaluating the foregoing findings as it relates to the Defendant's discharge under § 523(a)(15)(B), the Court cannot find that the Defendant has met his burden of establishing that the benefits of a discharge to him would outweigh the detrimental consequences to the Plaintiff. In fact, given the fact that the Plaintiff is

currently unemployed, and the Defendant has a job making just under twenty dollars ($20.00) per hour, a far greater burden would likely be imposed upon the Plaintiff if she, alone, were forced to assume the debt with the Crouse Lumber Company. In addition, the Court does not believe that the Defendant's standard of living will notably suffer, or fall below that of the Plaintiff's, if he is required to repay the Parties' marital debt. Accordingly, as the Defendant has not established that either of the exceptions contained under § 523(a)(15) are applicable, the marital debt at issue in this case is nondischargeable. Before concluding, however, the Court, for the record, wishes to make one final observation.

From the evidence presented at Trial, it does not appear to the Court that the Defendant intentionally set out to make the Plaintiff joint liability on the debt he incurred with the Crouse Lumber Company. Rather, it appears to the Court that the Plaintiff's joint liability on this debt simply stems from the fact that prior to the Parties' divorce, the Plaintiff had voluntarily agreed to be held jointly liable on all business debts incurred with the Defendant's excavating business, but that after the Parties' divorce neither the Plaintiff nor the Defendant gave proper and timely notice to the Crouse Lumber Company that the Plaintiff should no longer be held liable for such debts. No harm, however, seems to have been intended by the Defendant. Nonetheless, the Defendant's lack of malicious intent, and the Plaintiff's own failure to exercise due care does not change this Court's analysis under § 523(a)(15).

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Defendant's legal obligation to the Plaintiff regarding the debt to the Crouse Lumber Do It Center

be, and is hereby, determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(15).