### In re Dion W. BRODEUR, Debtor.

### Schalet R. Cox, Plaintiff,

### v.

### Dion W. Brodeur, Defendant.

#### No. 00–3268.

United States Bankruptcy Court, N.D. Ohio.

Dec. 13, 2001.

---

Randy L. Reeves, Lima, OH, for plaintiff.

Nancy S. Schramski, Lima, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff/Creditor's Complaint to determine the dischargeability of certain marital debts owed by the Defendant/Debtor. At the Trial, the Parties were afforded the opportunity to present evidence and make any arguments that they wished the Court to consider in reaching its decision. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debts at issue herein are nondischargeable for purposes of bankruptcy law.

### FACTS

On October 29, 1999, a divorce decree was entered terminating the marriage between the Plaintiff and the Defendant. The terms of this decree of divorce provided, among other things, that the Defendant was to assume and hold the Plaintiff harmless on certain marital obligations incurred jointly by the Parties during their marriage to one another; to wit: the Defendant's lease on a 1998 automobile, and a first and second mortgage which was secured against the Parties' marital residence. The Defendant, however, after incurring these obligations fell into arrears. In this regard, the factual information presented in this case revealed that shortly after the Parties divorced, the Defendant stopped making lease payments on his 1998 automobile, thereafter obtaining another automobile at a savings of Thirty-four dollars ($34.00) dollars per month. However, as a result of the Defendant's breach of this lease, the lessor asserted a claim for damages against both the Defendant and the Plaintiff for Twelve Thousand Three Hundred Ninety-seven dollars ($12,-397.00). Similarly, shortly after the Parties divorced, the Defendant, although making a few minor payments on the second mortgage, fell into arrears on both of the mortgage obligations which were secured against the Parties' former marital residence. Thereafter, as a result of this arrearage, the Defendant, who had been awarded the marital home in the Parties' divorce, quitclaimed the property back to the Plaintiff. However, by the time this event occurred the Defendant had incurred an obligation to both the secured creditor and to the Plaintiff in the amount of Ten Thousand Three Hundred Twenty-one and 51/100 dollars ($10,321.51). This arrearage eliminated most, if not all, of the equity that had previously existed in the property.

On July 18, 2000, the Defendant sought to discharge his legal obligation to pay the above debts through the filing of a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code; in his petition, the Defendant named the Plaintiff as a co-debtor on these obligations. Thereafter, in response to the

Defendant's bankruptcy petition, the Plaintiff timely commenced the instant adversary action seeking to have the Defendant's obligation to assume the automobile lease and the first and second mortgages held nondischargeable. With respect to the Plaintiff's complaint, the following factual information was presented to the Court:

The Plaintiff and the Defendant were married in 1993; two children, whose present ages are six and seven, were born as issue from the marriage. Since divorcing, the Defendant, who has remained single, has been employed in two different jobs. One is a full-time position as a surgical technician with a local hospital; the other job is a part-time position with the Ohio National Guard.[1] From these positions, the Defendant's present gross monthly salary is Three Thousand Five Hundred Seventeen and 30/100 dollars ($3,517.30) per month. However, from this salary, three mandatory deductions are taken: taxes/social security of Eight Hundred Eighty-four and 14/100 dollars ($884.14); insurance of Two Hundred Seven and 65/100 dollars ($207.65); and a child support deduction of Seven Hundred Forty-four and 01/100 dollars ($744.01). Thus, in terms of actual take-home pay, the Defendant receives approximately One Thousand Six Hundred Eighty-one and 50/100 dollars ($1,681.50) per month. In addition, the Defendant also pointed out at Trial that he currently has deducted from his salary an expense of One Hundred Five and 13/100 dollars ($105.13) per month for a work-related computer and uniforms. The Defendant, however, explained that this deduction is not permanent in nature.

In terms of possessions, the evidence presented in this case shows that besides a few household effects, the Defendant's only major possessions are a car with 120,000 thousand miles on it and a pension account whose value is based entirely on employer contributions. As for necessary expenses, it was put forth by the Defendant that the following itemized list accurately sets forth his reasonable monthly expenses:

| | |
|---|---|
| Rent | $ 400.00 |
| Electricity/Heating Fuel | $ 65.00 |
| Telephone | $ 36.30 |
| Home Maintenance | $ 20.00 |
| Food | $ 250.00 |
| Clothing | $ 50.00 |
| Laundry | $ 40.00 |
| Medical/Dental Expenses | $ 40.00 |
| Transportation | $ 110.00 |
| Recreation | $ 100.00 |
| Auto Insurance | $ 130.00 |
| IRS Deficiency | $ 20.00 |
| Auto Payment | $ 160.00 |
| Attorney Fees | $ 50.00 |
| Total | $1,471.30 |

In addressing the above expenses, the Defendant related to the Court that he owes One Thousand dollars ($1,000.00) to his attorney, and One Thousand Nine Hundred dollars ($1,900.00) to the IRS.

In addition to the above expenses, the Defendant also testified that he has an additional expense of approximately Four Hundred Thirty-nine and 99/100 dollars ($439.99) per month for tuition and books. According to the Defendant, this expense will terminate sometime in the year 2003 when he receives his associates degree in

1. The Court was informed after the Trial that because of the events of September 11, 2001, the Defendant had been called to active military duty for an indefinite period of time.

nursing. As for how the attainment of this degree will potentially affect his income, the Defendant stated that, over the course of time, he can expect "moderate" increases in his pay.

As for the Plaintiff's situation, the factual information presented in this case revealed that she just recently obtained a job as a music teacher. In this position, which according to the Plaintiff is relatively stable, the Plaintiff nets One Thousand Five Hundred and 80/100 dollars ($1,500.80) per month in income. In addition, the Plaintiff receives Six Hundred Sixty-nine and 80/100 dollars ($669.80) per month for child support and Eight Hundred dollars ($800.00) per month in the form of V.A. Benefits. This combined income, however, is just slightly insufficient—by approximately Forty dollars ($40.00) per month— to cover her reasonable monthly expenses which includes a monthly house payment of Seven Hundred Eighty-six dollars ($786.00). To make up this shortfall, the Plaintiff explained that she can make slight adjustments in her budget, and that on occasion she earns additional income by giving music lessons. The Plaintiff's budget constraints, however, have lead her to petition this Court for relief under Chapter 13 of the United States Bankruptcy Code.

As for the circumstances surrounding her Chapter 13 case, the Plaintiff, at the time of Trial, was current in making payments toward her Chapter 13 plan of reorganization. The circumstances, however, surrounding the Plaintiff's financial situation clearly show that unless the Defendant starts making payments on the marital obligations he was required to assume in the Parties' divorce decree, the Plaintiff's plan of reorganization will, at best, be difficult to maintain. In addition, the circumstances surrounding this case clearly show that the primary reason for the Plaintiff filing a Chapter 13 case was the Plaintiff's desire to protect her house from foreclosure. According to the Plaintiff, this goal was important for a couple of reasons. First, the Plaintiff related to the Court that she, as the custodial parent of the Parties' two minor children, wished to provide her children with a stable home environment. Second, the Plaintiff was concerned that if she lost her home, she would unlikely, given her current financial situation, be able to purchase another home. Further, according to the Plaintiff, this last concern is made even more acute by the fact that in order to purchase her current home she was required to utilize a one-time V.A. benefit. (The Plaintiff also pointed out that the Defendant did not utilize his one-time V.A. benefit to purchase the Parties' marital home).

## LAW

### 11 U.S.C. § 523(a)(15). Exceptions to Discharge

Section 523(a)(15) of the Bankruptcy Code provides:

> A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a government unit unless—
> >
> > > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the

debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

## DISCUSSION

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Thus, this case is a core proceeding.

The statutory basis for the Plaintiff's Complaint to Determine Dischargeability rests entirely upon the exception to discharge contained in § 523(a)(15) of the Bankruptcy Code. Under this section, any debts which are incurred by a debtor during the course of a separation or divorce or under a separation agreement or court order, and which do not otherwise fall within the exception to discharge contained in 11 U.S.C. § 523(a)(5), are excepted from the scope of a bankruptcy discharge. For purposes of this section, the creditor/spouse bears the initial burden of establishing that the debt at issue was incurred by the debtor during the course of a divorce or separation, or in connection with a separation agreement or divorce decree or other order of a court of record. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). However, upon the creditor/spouse meeting this requirement, the burden then shifts to the debtor to establish either an inability to pay the marital debt, or that a discharge of the marital debt would result in a benefit to the debtor which would outweigh the

detrimental consequences to the creditor/spouse. *Melton v. Melton (In re Melton)*, 228 B.R. 641, 645 (Bankr.N.D.Ohio 1998). With respect to this burden of proof allocation, the Parties in this case do not dispute the fact that the Defendant's obligation to pay the debts at issue herein arose from a divorce decree; thus, it is the Defendant's burden to prove, by a preponderance of the evidence, that one of the two exceptions to nondischargeability contained in § 523(a)(15) are applicable. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard used in dischargeability proceedings). For purposes of Opinion, the Court will begin its analysis by examining whether the Defendant has met his burden under the first exception to discharge set forth in § 523(a)(15)(A); that is, whether the Defendant has shown that he does not have the "ability to pay" the marital debts allocated to him in the Parties' divorce decree.

The "ability to pay" test of § 523(a)(15)(A) requires that a court conduct a two-part analysis. First, it must be determined whether the debtor has a sufficient amount of disposable income available to pay the marital debt. *Miller v. Miller (In re Miller)*, 247 B.R. 412, 415 (Bankr.N.D.Ohio 2000). For purposes of this test, disposable income may be defined as that income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor. *Id.* In conducting this part of the analysis, normally a debtor's income and expenses are gauged from the time the trial is conducted, although if the circumstances of the particular case so warrant, a bankruptcy court may consider circumstances concerning a debtor's future earning potential. *Id.* Next, if the debtor is found to have some disposable income

available, the Court must then determine whether the debtor can realistically pay, after considering the total amount of indebtedness involved, the marital debts within a reasonable amount of time. *Melton v. Melton (In re Melton),* 238 B.R. 686, 695 (Bankr.N.D.Ohio 1999).

In support of his compliance with the above requirements, the Defendant contends that after figuring in all his expenses, there exists a significant shortfall—i.e., Three Hundred Fifty-four and 92/100 dollars ($354.92)bin his monthly budget. This Court, however, is not required to accept, at face value, the Defendant's itemized expenses; to the contrary, the Court is under a duty to scrutinize the Defendant's enumerated expenses so as to ensure that such expenses are reasonable and thereby properly excluded from the Defendant's available disposable income. *Dunn v. Dunn (In re Dunn),* 225 B.R. 393, 400–401 (Bankr.S.D.Ohio 1998); *Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 301 fn. 27 (Bankr.D.R.I.1996). In this regard, the Court finds, for a couple of reasons, that there should exist an upward adjustment in the amount of disposable income that the Defendant has available to repay his marital debts.

First and foremost, in a situation such as this where a debtor, for purposes of discharging a debt under § 523(a)(15)(A), seeks to exclude tuition expenses from his disposable income, it is the position of this Court that there must exist a strong nexus between the tuition related expenses and how such expenses are reasonably necessary to support the debtor and his or her dependent(s). In this case, however, no evidence has been put forth establishing such a nexus. In fact, if anything, just the opposite is true as the attainment of a degree in nursing, by the Defendant's own account, will not significantly improve his salary.

The second difficulty the Court has with the Defendant's enumerated expenses is that not all of them are permanent in nature; specifically, the evidence presented in this case revealed that the following expenses would, at some point in the future, terminate: a computer expense and uniform expense of One Hundred Five and 13/100 dollars ($105.13) per month, attorney fees of Fifty dollars ($50.00) per month and an IRS deficiency payment of Twenty dollars ($20.00) per month. This is not to say that such expenses are not legitimate. However, to completely exclude such expenses from the scope of the Defendant's disposable income seems patently unfair when, in the not too distant future, the Defendant will enjoy the benefit of this extra income.

Therefore, for the above reasons, the Court will disallow the Defendant's tuition related expenses totaling Four Hundred Thirty-nine and 99/100 dollars ($439.99) per month. In addition, based upon the temporary nature of some of the Defendant's expenses, the Court will add an additional One Hundred Fifty dollars ($150.00) to the amount of monthly disposable income the Defendant has available to pay his marital debts. Thus, after factoring in these adjustments to the Defendant's disposable income, the Court finds that the Defendant, instead of having a shortfall in his monthly income of Three Hundred Fifty-four and 92/100 dollars ($354.92), will instead show a net gain in his monthly income of Two Hundred Thirty-five and 07/100 dollars ($235.07).

As for whether this amount of disposable income can, pursuant to the second part of the "ability to pay" test, repay the Defendant's marital debts within a reasonable amount of time, the Court begins by noting that it is generally improper to devote a debtor's entire disposa-

ble income to the repayment of the marital debts because unexpected expenses, such as car repairs, may arise. *Koenig v. Koenig (In re Koenig)*, 265 B.R. 772, 777 (Bankr.N.D.Ohio 2001) Notwithstanding, the Court feels that in this particular case it would be equitable to require the Defendant to devote a significant portion of his disposable income toward the repayment of his marital debts as a large portion of his outstanding debts were incurred needlessly. In particular, the Defendant offered no viable justification as to why, after breaching his automobile lease, he incurred for himself, and the Plaintiff, a debt of Twelve Thousand Three Hundred Ninety-seven dollars ($12,397.00), when his payment on a subsequent automobile dropped by just Thirty-four dollars ($34.00) per month. Thus, for this reason, the Court finds that it would be both reasonable and equitable to require the Defendant to devote Two Hundred dollars ($200.00) of his monthly disposable income toward the repayment of his marital debts.

In considering this figure against the Defendant's marital debts, which total more than Twenty-two Thousand dollars ($22,000.00), it is clear that a judgment of nondischargeability against the Defendant would entail, at a minimum, the Defendant repaying his marital debts over an eight-year period of time. Although this is a rather long period of time, the Court, given the priority the Bankruptcy Code accords to domestic obligations, does not find that such a time period is unreasonable for purposes of the second part of the "ability to pay" test. Therefore, the Court holds that for purposes of the "ability to pay" test of 11 U.S.C. § 523(a)(15)(A), the Defendant has not met his burden thereunder. The Court thus now turns to address the second exception to nondischargeability contained in § 523(a)(15): the balancing test of subparagraph (B).

Section 523(a)(15)(B) provides that a marital debt will be discharged if a debtor can establish that the benefit of discharging the debt would outweigh the detrimental consequences to a spouse, former spouse, or child of the debtor. *See, e.g., Hart v. Molino (In re Molino)*, 225 B.R. 904, 908–09 (6th Cir. BAP 1998). In making this determination, this Court has applied what has become to be known as the "standard of living" test to determine if a debtor has met his or her burden under § 523(a)(15)(B). *In re Koenig*, 265 B.R. at 777. In conducting this test, a court is to review the financial status of the debtor and the creditor and then compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge. If, after making this analysis, the Court finds that with the marital debts not discharged, the debtor's standard of living will be greater than or approximately equal to the creditor's standard of living, then the debt should be found to be nondischargeable under the § 523(a)(15)(B) test. Conversely, if the Court concludes that the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B). *In re Molino*, 225 B.R. at 908–09. Although many different factors are relevant under this test, some of the most important considerations in this respect concern the parties' current income, expenses and available assets. *Bubp v. Romer (In re Romer)*, 254 B.R. 207, 214 (Bankr.N.D.Ohio 2000).

In this case, a comparison of the Parties' respective standards of living show that while both the Plaintiff and the Defendant are able to afford all of life's basic necessities, neither party has what

could be termed luxury items and expenses. In terms of income, the Defendant's net monthly income of One Thousand Six Hundred Eighty-one and 50/100 dollars ($1,681.50) is significantly lower than that of the Plaintiff's net monthly income of Two Thousand Nine Hundred Seventy and 60/100 dollars ($2,970.60). However, the Plaintiff's income figure includes the receipt of Six Hundred Sixty-nine and 80/100 dollars ($669.80) from the Defendant for his portion of child support for the Parties' two minor children. In reality, however, this money belongs not to the Plaintiff, but to the Parties' minor children. Along this same line, the Plaintiff, unlike the Defendant, has not deducted from her net monthly income those expenses she incurs for the Parties' minor children. Thus, when one factors in these particular considerations, the Plaintiff's net monthly income becomes comparable to that of the Defendant.

With respect to the Parties' individual assets, a similar picture arises as the Plaintiff, being the owner of the Parties' former marital residence, has much more in the way of assets. However, this consideration is offset by a number of mitigating factors. First, the Plaintiff is the residential parent of the Parties' two minor children. Second, the Plaintiff, but not the Defendant, had to utilize a one-time V.A. benefit to obtain the Parties' former marital residence. Third, the Plaintiff only received the house when the Defendant, who had been originally awarded the property, found that he could no longer afford it. Finally, the Parties' former marital residence has very little, if any, in the way of equity in it. Thus, when all things are considered, neither party can be said to have a significant amount of assets.

In light of the above considerations, it is apparent to the Court that neither the Plaintiff nor the Defendant have a standard of living which is significantly higher than that of the other party. As for whether the repayment of the marital debts would cause the Defendant's standard of living to fall materially below that of the Plaintiff's, it is apparent that the Defendant, if forced to repay the marital debts, would greatly struggle to meet his obligations. Nevertheless, it is also very obvious that a severe hardship would befall the Plaintiff if the Defendant were discharged of his marital debts. (In this regard, the particular circumstances of this case represent a prime example of a situation, all too common today, where the incomes of two people which were formerly just barely sufficient to support one household, must now support two households.) Thus, after giving the matter very careful consideration, the Court, although realizing that the Defendant would greatly benefit by receiving a discharge of his marital debts, cannot come to the conclusion that the Defendant's standard of living, as compared to the Plaintiff's, would markedly suffer if he were required to repay his marital obligations. Therefore, the Court must decline to award the Defendant a discharge of his marital debts under § 523(a)(15)(B). In coming to this decision, the Court observes that § 523(a)(15)(B) states that in order for a marital debt to be discharged, not only must the debtor benefit from the discharge, but that such a benefit must *outweigh* the detrimental consequences to the other party.

In conclusion, the Court, for the reasons enumerated in this Opinion, finds that the Defendant has not met his burden under either of the exceptions to nondischargeability contained in § 523(a)(15). As a result, to the extent that the Plaintiff has any liability on the obligations the Defendant was required to assume in the Parties' decree of divorce, such obligations will be nondischargeable. In reaching the conclusions found herein, the Court has con-

sidered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that those obligations owed to the Plaintiff, Schalet R. Cox, from the Defendant, Dion W. Brodeur, pursuant to the Parties' decree of divorce (Common Pleas Court of Allen County, Ohio, Case No. DR99–04–0250), be, and are hereby, determined to be NONDISCHARGE-ABLE DEBTS.