In re Steven **GENGLER**, Debtor.

**Loretta Catherine Sacher, Plaintiff,**

v.

**Steven Gengler, Defendant.**

No. 01–3133.

United States Bankruptcy Court, N.D. Ohio.

April 19, 2002.

Deborah K. Spychalski, Toledo, OH, for Plaintiff.

Steven E. Diller, Van Wert, OH, for Defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This case comes before the Court after a Trial on the Plaintiff's complaint to determine whether certain marital debts that the Debtor was obligated to pay pursuant to a Separation Agreement should be excepted from discharge. At the Trial, it was established that the debt at issue arose under the following circumstances:

The Plaintiff, Loretta Sacher, and the Debtor, Steven Gengler, (hereinafter referred to as Plaintiff and Debtor respectively), were husband and wife when the debt in question was incurred. After a marriage of twenty-two years, however, the Parties filed for a divorce. A Judgment Entry of Divorce was then granted to the couple on January 7, 2000. The Entry of Divorce, which incorporated the Parties' Separation Agreement, divided the couples' assets and debts as follows: the Debtor maintained possession of the marital home (subject to two mortgages), three vehicles, and agreed to pay and hold the Plaintiff harmless for approximately Thirty-eight Thousand dollars ($38,000.00) of the outstanding marital debt. By comparison, the Plaintiff received the couples' boat and boat trailer, one vehicle, and also agreed to pay and hold harmless the Debtor for approximately Thirty-eight Thousand dollars ($38,000.00) in marital debt. Additionally, the Parties agreed to waive any obligations for alimony or spousal support from each other.

At the time the Parties' Divorce was finalized, the Debtor was gainfully employed as a journeyman welder earning Forty-five Thousand dollars ($45,000.00) per year, while the Plaintiff, who at the time of Divorce was employed as a school teacher, earned only Twenty-one Thousand dollars ($21,000.00). Also, at the time of divorce, the couple had one child under the age of majority. Presently, this child, who has since reached the age of majority, resides with the Plaintiff.

In February of 2001, the Debtor was laid-off from his job. Not long thereafter, on April 17, 2001, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. In his bankruptcy petition, the Debtor listed Eighty-two Thousand Five Hundred Thirty-one and 96/100 dollars ($82,531.96) in debt secured by the marital home and Twenty-four Thousand Four Hundred Six and 80/100 dollars ($24,406.80) in unsecured debt. Among the unsecured debt was approximately Twenty-one Thousand dollars ($21,000.00) of credit card debt incurred jointly by the Parties during their marriage and of which the Debtor had agreed to pay and hold the Plaintiff harmless pursuant to their Separation Agreement. This Twenty-one Thousand dollars ($21,000.00) of unsecured marital debt forms the basis of the dispute between the Parties.

On June 22, 2001, the Plaintiff filed a timely complaint asking the Bankruptcy Court to except from discharge the Twenty-one Thousand dollars ($21,000.00) of credit card obligation that the Debtor had promised to pay. The Plaintiff argues that these debts should be excepted from discharge under 11 U.S.C. § 523(a)(15) because they arose from the Parties' divorce decree.[1] The Debtor, however, argues

1. The Plaintiff, in her complaint, also claimed a cause of action under § 523(a)(5) which generally excepts from discharge those marital obligations which are in the nature of support. However, no evidence was offered at Trial in support of this claim. Therefore, the Court will not consider that portion of the

that the exceptions to nondischargeability, as contained in § 523(a)(15), are applicable because he does not have the ability to pay the debt in question and that the detriment to the Plaintiff, if forced to repay the debt, would not outweigh the benefit to him if the debt were to be discharged.

In furtherance of their respective positions, the facts presented at Trial revealed that the Debtor is still laid-off from his job, but that the Debtor has secured employment elsewhere. The Debtor's new employment, including monthly overtime, renders him a net monthly income of One Thousand Seven Hundred Twenty-four and 86/100 dollars ($1,724.86). The Debtor also claims the following monthly obligations:

| | |
|---|---|
| Rent | $340.00 |
| Utilities | 200.00 |
| Telephone | 75.00 |
| Water/Sewer | 19.00 |
| Cable | 38.00 |
| Food | 450.00 [2] |
| Clothing | 25.00 |
| Laundry | 10.00 |
| Medical and Dental | 20.00 |
| Transportation | 100.00 |
| Renter's Insurance | 15.42 |
| Life | 8.90 |
| Health | 45.00 |
| Auto | 44.92 |
| Car Payment | 300.00 |
| Total Monthly Expenses | $1,691.24 |

Thus, based on these figures, the Debtor claims a monthly surplus of only Thirty-three and 62/100 dollars ($33.62). In addition, the Debtor presented evidence at Trial indicating that his monthly income would soon be decreased because of the lack of overtime available to him. Specifically, the Debtor claims that his monthly

take-home pay will likely be reduced to approximately One Thousand Seven Hundred dollars ($1,700.00). Should this happen, the Debtor, based upon his above enumerated expense, would then face a monthly surplus of only Eight and 76/100 dollars ($8.76).

As for the circumstances relating to the Plaintiff, evidence at Trial was submitted that the Plaintiff has been employed as a school teacher, in the same school, for the last six years. The Plaintiff also stated that she is remarried and lives with her new husband in a home he recently acquired, along with another property, through inheritance. In this regard, the evidence presented revealed that both of the properties owned by the Plaintiff's husband are free from any mortgage obligations. With respect to income, the Plaintiff and her husband together receive, after mandatory deductions, Two Thousand Seven Hundred Thirty and 25/100 dollars ($2,730.25) in monthly income. This figure is based on One Thousand Nine Hundred dollars ($1,900.00) of net income from the Plaintiff and Eight Hundred Thirty and 25/100 dollars ($830.25) of net income from the Plaintiff's husband.[3] On the other side of the equation, the Plaintiff and her husband also show monthly obligations amounting to Three Thousand Forty-seven dollars ($3,047.00). Thus, based on these figures, the Plaintiff currently contends that she faces a monthly deficit in her household budget of Three Hundred Sixteen and 75/100 dollars ($316.75).

---

Plaintiff's complaint that relates to § 523(a)(5).

**2.** This figure includes household cleaning items and toiletries.

**3.** The Plaintiff's husband is self employed and claims a gross monthly income of One Thou-

sand Eighty-three dollars ($1,083.00). This figure was then reduced by 25% for purposes of income taxes, social security, and other miscellaneous deductions to arrive at a net monthly income figure of Eight Hundred Thirty and 29/100 dollars ($830.29).

## DISCUSSION

Pursuant to 28 U.S.C. § 157(b)(2)(1), proceedings brought to determine the dischargeability of a particular debt are core proceedings. Thus, this case is a core proceeding.

The Plaintiff has asked this Court to except from discharge approximately Twenty-one Thousand dollars ($21,000.00) of jointly incurred marital debt. The Plaintiff brings her action under § 523(a)(15) of the Bankruptcy Code which provides, in relevant part, that:

> (a) A discharge under § 727,1141,- 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

Thus, under this section those debts incurred in connection with a divorce or separation are excluded from the scope of a bankruptcy discharge, unless the debtor does not have the ability to pay the debt or unless discharging the debt would result in a benefit to the debtor which outweighs the detrimental consequences to the former spouse.

Under § 523(a)(15), the burden of establishing that the debt at issue was incurred by the debtor during the course of a divorce or separation, or in connection with a separation agreement, divorce decree or other order of a court of record rests with the creditor/spouse. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr.N.D.Ohio 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr. W.D.Ky.1996). Once this requirement has been met, however, the burden then shifts to the debtor to establish, by a preponderance of the evidence, either an inability to pay the debt or that a discharge would result in a benefit to the debtor that outweighs the detriment to the creditor/spouse. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard used in dischargeability proceedings), *Melton v. Melton (In re Melton)*, 228 B.R. 641, 645 (Bankr.N.D.Ohio 1998) (discussing the shifting of the burden of proof). Here, the Parties do not dispute that the debt at issue arose in connection with the terms of their Separation Agreement, and as such, the burden is upon the Debtor to establish that he falls within one of the exceptions to nondischargeability under § 523(a)(15). The Court begins this analysis by examining whether the Debtor has satisfied his burden of proof under the "ability to pay" test of § 523(a)(15)(A).

The "ability to pay" test of § 523(a)(15)(A) requires that a court conduct a two-part analysis. First, the Court looks to whether the debtor has disposable income available to pay the marital debt. *Miller v. Miller (In re Miller)*, 247 B.R. 412, 415 (Bankr.N.D.Ohio 2000). Next, if the debtor is found to have some disposable income available, the Court must then determine, after giving consideration to the total amount of indebtedness owed,

whether the debtor can realistically pay the marital debt within a reasonable amount of time. *Id.* For purposes of this test, the debtor's income and expenses are normally gauged from the time of trial. *Newcomb v. Miley (In re Miley)*, 228 B.R. 651, 656 (Bankr.N.D.Ohio 1998). However, if the circumstances so warrant, the Court may consider a debtor's future earning potential in determining the debtor's ability to pay. *Id.*

 For purposes of the "ability to pay" test, disposable income is defined as that income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor. *Miller,* 247 B.R. at 415. In support of his argument that he lacks sufficient available income to pay the debt at issue, the Debtor asserts that, after deducting for his monthly expenses, he has only Eight and 76/100 dollars ($8.76) of monthly disposable income. However, the Court is not required to accept, at face value, a debtor's itemized expense, but is rather under a duty to scrutinize a debtor's expenses so as to ensure that such expenses are reasonable. *Dunn v. Dunn (In re Dunn),* 225 B.R. 393, 400–401 (Bankr.S.D.Ohio 1998). As applied to this case, the Court has two major concerns with the Debtor's stated expenses.

First, the Debtor has no obligation to pay spousal or child support and thus must only provide for his own reasonable needs. Considering this, the Debtor's claim of Four Hundred Fifty dollars ($450.00) per month for food, cleaning supplies, and personal hygiene items seems somewhat high for a single man with no dependents, living in an apartment, and whose employment is not of the type that requires dining out. Hence, given these considerations, the Court finds that instead the Debtor is only entitled to Three Hundred Fifty dollars ($350.00) for these items. Second, the Court observes that the Debtor included in his disposable income figure Three Hundred Forty-five dollars ($345.00) of monthly debt that no longer exists; specifically, a monthly car payment of Three Hundred dollars ($300.00) and monthly insurance expense of Forty-five dollars ($45.00).

 Therefore, when factoring in the above stated adjustments, the Debtor, rather than showing a de minimis amount of monthly disposable income, now shows a monthly surplus of Four Hundred Fifty-three and 96/100 dollars ($453.96). Nevertheless, finding a monthly surplus does not complete the Court's disposable income analysis. Instead, in calculating disposable income, the Court must also consider that unexpected expenses may arise, such as car repairs. *Perkins v. Perkins (In re Perkins),* 221 B.R. 186, 190 (Bankr. N.D.Ohio 1998). Therefore, in allowing for such unexpected expenses, the Court will deduct One Hundred Fifty dollars ($150.00) a month from the Debtor's disposable income, thus leaving the Debtor with approximately Three Hundred dollars ($300.00) of monthly disposable income.[4]

 Having determined that the Debtor has at least Three Hundred dollars ($300.00) of disposable income, the Court must next determine if the Debtor, in us-

---

4. In arriving at this figure, the Court notes that the Debtor's disposable income is absent any consideration of his income tax refund. At Trial, the Debtor testified that for the year 2000 he received a tax refund of Two Thousand Five Hundred dollars ($2,500.00) and that he will be receiving a refund for the year 2001. Therefore, if one assumes that the Debtor will continue to receive similar annual tax refunds, the Three Hundred dollars ($300.00) of monthly disposable income stated herein is a significant understatement of the Debtor's actual monthly disposable income.

ing these funds, can realistically pay the debt within a reasonable amount of time. *Miller*, 247 B.R. at 415. In this case, the total amount of indebtedness owed is approximately Twenty One Thousand dollars ($21,000.00). If the Debtor were to apply the entire Three Hundred dollars ($300.00) toward the repayment of this debt, he would be able to pay off the debt in under six years. As to whether six years is a reasonable amount of time to pay a debt of Twenty-one Thousand dollars ($21,000.00), this Court looks to its own past decisions. In this regard, this Court, under facts similar to the case at bar, has found eight years to be a reasonable amount of time to pay a debt. Specifically, in *In re Brodeur*, this Court held that a disposable income of Two Hundred Thirty-five and 07/100 dollars ($235.07) per month was sufficient to pay a marital debt of Twenty-two Thousand dollars ($22,000.00) over eight years. *Cox v. Brodeur (In re Brodeur)*, 276 B.R. 827, (Bankr.N.D.Ohio 2001). Similarly, in *In re Koenig*, this Court held 8½ years to be a reasonable amount of time to repay a marital debt. *Koenig v. Koenig (In re Koenig)*, 265 B.R. 772, 776 (Bankr. N.D.Ohio 2001). Therefore, consistent with these past holdings, the Court finds that six years is a reasonable amount of time to pay the debt in question. Accordingly, the Court holds, for purposes of § 523(a)(15)(A), that the Debtor has not met his requisite burden of demonstrating that he does not have the "ability to pay" the marital debt in question. Having determined this issue, the Court will now proceed to examine whether the Debtor is entitled to a discharge of his marital obligation under the second exception to nondischargeability set forth in § 523(a)(15): the balancing test contained in paragraph (B).

Section 523(a)(15)(B), which is commonly referred to as the "balancing test," provides that a debtor/spouse is entitled to a discharge of a marital debt if discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the debtor's former spouse or children. To apply this test, a court is to compare the standard of living of the debtor as set against that of the creditor, and then ascertain whether "the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged . . . ." *Hart v. Molino (In re Molino)*, 225 B.R. 904, 908–09 (6th Cir. BAP 1998). In comparing the parties' respective standards of living, the Court considers several variables including the parties' current income, expenses, assets, liabilities, and future earning prospects. *Id.* at 910. For purposes of this test, the Court begins its analysis by evaluating the Debtor's standard of living.

As previously discussed, the Court has already found that the Debtor has a monthly surplus of at least Three Hundred dollars ($300.00). In addition to finding a monthly surplus of at least Three Hundred dollars ($300.00), the Court also notes that the Debtor has the potential to enhance his future earnings and therefore, this surplus is likely to be a floor and not a ceiling. Specifically, the Court notes three ways in which the Debtor's future earnings may increase.

First, the evidence presented at Trial showed that the Debtor may be called back to a job earning approximately Forty-five Thousand dollars ($45,000.00) per year. Second, even if Debtor is not called back to his former place of employment, the Debtor's profession as a journeyman welder will likely provide him with other employment opportunities yielding him greater earnings than his current employment. Finally, should the Debtor be unable to secure other employment, the

Debtor states that he is likely to receive pay raises at his present place of employment. In making these observations, the Court is aware that the Debtor has sustained a work related injury that requires him to periodically receive medical treatment. However, the Court is not convinced that this factor will, for the foreseeable future, significantly impair the Debtor's earning potential.

Turning next to the Plaintiff's standard of living, a number of observations can be made. First, the Plaintiff, together with her new husband earn a monthly net income of Two Thousand Seven Hundred Thirty and 25/100 dollars ($2,730.25). Second, as for property, the Plaintiff's husband owns two parcels of real property free from any mortgage obligations. These properties include the marital home the couple reside in and a smaller house rented to the Plaintiff's daughter for One Hundred Seventy-five dollars ($175.00) per month. However, notwithstanding the lack of any mortgage obligations, the Plaintiff still shows a monthly deficit of Three Hundred Sixteen and 75/100 dollars ($316.75). In looking at this monthly deficit, certain expenses set forth by the Plaintiff are clearly for expenditures which the Court has not (or will not) permit the Debtor to otherwise include within his monthly budgeted expenses: a Two Hundred dollar ($200.00) entertainment expense; Forty dollars ($40.00) in charitable contributions; and a Fifty dollars ($50.00) monthly allotment for her non-dependent daughter's living expenses. Also, contributing to the deficit is the fact that the Plaintiff's daughter, who resides in the second home, is not currently paying the One Hundred Seventy Five dollars ($175.00) monthly rent as agreed. However, even if the Court were to consider the effect that the additional rental income and reduced expenses would have upon the Plaintiff's monthly disposable income, the Plaintiff would still have an amount well less than the amount of disposable income the Debtor has available.

Therefore, in comparing the standard of living of the two Parties, the Court cannot find that the Debtor, who shows a monthly surplus of at least Three Hundred dollars ($300.00) and who has the potential for increased future earnings, has met his burden of establishing that the benefit of a discharge of the marital debt to him would outweigh the detrimental consequences to the Plaintiff. Furthermore, for the above reasons, the Court does not believe that the Debtor's standard of living will notably suffer or fall below that of the Plaintiff if he is required to pay the Parties' marital debt.

Accordingly, based upon these findings, the Court holds that the Debtor has not established his requisite burden under either paragraphs (A) or (B) of § 523(a)(15). Therefore, the marital debt in question is held to be nondischargeable. In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the legal obligations of the Debtor, Steven Gengler, to the Plaintiff, Loretta Sacher, concerning those credit card debts enumerated in the Parties' Decree of Divorce (Case No. DR 99–10–219, Court of Common Pleas of Van Wert County, Ohio, dated January 7, 2000), be, and are hereby, determined to be NON-DISCHARGEABLE DEBTS under the same terms and conditions as set forth in the Parties' Decree of Divorce.