**In re Janice ERD, Debtor.**

**Ronald Erd, Plaintiff,**

v.

**Janice Erd, Defendant.**

**Nos. 00–3300, 00–33182.**

United States Bankruptcy Court, N.D. Ohio.

May 10, 2002.

Carl A. Kuhnle, Holland, OH, for Debtor.

Elliot H. Feit, Toledo, OH, for Plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court pursuant to an Order entered by this Court permitting the Parties to submit their case on Trial Memorandum and other supporting documents. At issue in this case is the dischargeability of a particular marital debt owed by the Defendant/Debtor to the Plaintiff. The Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue herein is Nondischargeable.

## FACTS

This case originated from a divorce that took place on December 2, 1999, between the Defendant, Janice M. Erd, (hereinafter the "Debtor") and the Plaintiff, Ronald T. Erd, (hereinafter the "Plaintiff"). Two children were born as issue from the marriage, both of whom are under the age of majority and who are now in the Plaintiff's custody. According to the Separation Agreement and Property Settlement that was made a part of the Parties' Divorce Decree, the Debtor was to pay and hold the Plaintiff harmless on certain debts, including a Standard Federal/MBNA joint credit card in the amount of Seven Thousand Five Hundred dollars ($7,500.00). However, since the entry of the Parties' divorce decree, the Debtor has not yet

made one payment on this obligation which was set at One Hundred Thirty-nine dollars ($139.00) per month. As a result, the Plaintiff began and has subsequently continued making the payments on this debt. In actual numbers, the facts of this case show that the Plaintiff, as of February 5, 2002, has paid an amount of One Thousand Eight Hundred and Twenty dollars ($1,820.00), thus leaving a remaining balance on the account of Seven Thousand Seventy-seven and 87/100 dollars ($7,077.87).

On August 1, 2000, the Debtor, who is now remarried to a one Roland K. Spildener, filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Afterwards, the Plaintiff, who was not listed as a creditor in the Debtor's bankruptcy petition, filed a Complaint against the Debtor pursuant to 11 U.S.C. § 523(a)(15) seeking to except from discharge the credit card debt the Debtor was ordered to assume. In response, the Debtor asserted that the debt should be discharged under one of the two exceptions to nondischargeability set forth in § 523(a)(15).

On the issue as to the dischargeability of the credit card debt, the Parties each presented evidence with respect to their financial condition. As it pertains to the Debtor, this evidence shows that, although the Debtor does not have custody of her minor children, her children visit her on a regular basis. In terms of expenses, the Debtor submitted that, along with her husband, the following itemized list constituted her reasonable monthly expenses:

| | Debtor | Spouse |
|---|---|---|
| Rent | $ 500.00 | $ 500.00 |
| AOL–Internet | $ 22.00 | |
| Electric and Heating Fuel | $ 125.00 | |
| Water and Sewer | $ 15.00 | |
| Telephone | $ 75.00 | |
| Cable | $ 55.00 | |
| Cell Phone (Ave.) | $ 127.00 | $ 65.00 |
| Medical/Dental Expenses | $ 90.00 | $ 100.00 |
| Food | $ 440.00 | $ 300.00 |
| Clothing | $ 80.00 | $ 25.00 |
| Laundry/Dry Cleaning | $ 10.00 | |
| Transportation | $ 100.00 | $ 145.00 |
| Recreation | $ 200.00 | $ 50.00 |
| Charitable Contributions | $ 26.65 | |
| 401K @ 3% of gross income | $ 96.79 | |
| Health Insurance | $ 122.81 | |
| Auto Insurance | $ 47.00 | $ 47.00 |
| Installment Payments | | $ 320.00 |
| Miscellaneous Credit Cards | $ 30.00 | $ 80.00 |
| Child Support | $ 683.48 | $ 860.00 [1] |
| Total Individual Monthly Expenses | $2,823.73 | $2,514.00 |

With respect to these expenses, the evidence presented shows that the Debtor and her new husband, have in the recent past increased their rental costs which went from Eight Hundred Thirty-five dollars ($835.00) per month to One Thousand dollars ($1,000.00) per month. Also, as it relates to the above expenses, the evidence in this case shows that the above expenses include costs for such things as the Debtor getting her nails manicured on a monthly basis and eating out on a regular basis. To fund these expenditures, the Debtor has incurred postpetition credit card debt.

In terms of income, it was revealed that the Debtor, who for the past twenty-five years has worked for United Postal Service, makes Thirty-eight Thousand Seven Hundred Fourteen and 04/100 dollars ($38,714.04) per year. On a monthly basis,

---

1. With respect to the spouse's expenses, a submitted Schedule J showed that he is making monthly child support payments in the amount of $860.00. In actuality, his payments only constitute a little more than half of what he contends (about $516.00) while, at times, the payments are less than that amount.

this salary, after factoring in mandatory deductions, amounts to Two Thousand One Hundred Seventy-six and 25/100 dollars ($2,176.25), thus leaving the Debtor, based upon her enumerated expenses, with a monthly deficiency of Six Hundred Forty-seven and 48/100 dollars ($647.48). By comparison, the Debtor's husband, who is employed as a mason, nets approximately Two Thousand Two Hundred Seventy-five dollars per month ($2,275.00), thereby leaving him with a claimed monthly deficiency of Two Hundred Thirty-nine dollars ($239.00).

As it pertains to the Plaintiff's financial situation, the facts of this case reveal that the Plaintiff, who has custody of the Parties' two children, was awarded the Parties' marital residence. The Plaintiff and the Debtor further agreed that their two children, who are now eleven and thirteen years of age, would attend a parochial grade-school for which the Plaintiff would take responsibility in paying the tuition. In exchange for the Plaintiff paying this tuition, the Plaintiff was permitted to defer paying the Debtor Thirty-three Thousand dollars ($33,000.00), which represented her share of the equity in the marital home.

With respect to the Plaintiff's income and expenses, it was submitted that the Plaintiff, who by working a considerable amount of overtime earns Seventy-three Thousand dollars ($73,000.00) per year, nets Four Thousand Eight Hundred Sixty-eight dollars ($4,868.00) per month after taking into consideration the child support he receives. On the other side of the equation, the Plaintiff claims reasonable monthly expenses totaling Five Thousand Three Hundred Sixty-one and 93/100 dollars ($5,361.93); these expenses include, but are not limited to a first mortgage in the amount of One Thousand Two Hundred Eleven and 11/100 dollars ($1,211.11), a second mortgage in the amount of Three

Hundred Forty-nine and 56/100 dollars ($349.56) (for a debt consolidation loan), a truck payment amounting to Four Hundred Eighty-nine and 95/100 dollars ($489.95), and a child care expense in the amount of Four Hundred Twenty-five dollars ($425.00). As it pertains to the Plaintiff's monthly shortfall in income, it was explained that this shortfall is being funded by an equity line on his residence as well as continuous withdraws from his 401(k) plan.

## LAW

### 11 U.S.C. § 523(a)(15). Exceptions to Discharge

Section 523(a)(15) of the Bankruptcy Code provides:

A discharge under § 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court record, a determination made in accordance with the State or territorial law by a government unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental conse-

quences to a spouse, former spouse, or child of the debtor[.]

## DISCUSSION

Proceedings brought pursuant to § 523(a)(15) are core proceedings over which this Court has subject matter jurisdiction. 28 U.S.C. § 157(b)(2)(I).

■ The statutory basis for the Plaintiff's Complaint to Determine Dischargeability rests entirely upon the exception to discharge contained in § 523(a)(15) of the Bankruptcy Code. Under this section, any debts that are incurred by a debtor during the course of a separation or divorce or under a separation agreement or court order, and which do not otherwise fall within the exception to discharge contained in 11 U.S.C. § 523(a)(15), are excluded from the scope of a bankruptcy discharge. *In re Henderson,* 200 B.R. 322, 324 (Bankr.N.D.Ohio 1996); *Perkins v. Perkins (In re Perkins),* 221 B.R. 186, 190 (Bankr.N.D.Ohio 1998). With respect to this section, the Plaintiff bears the initial burden of proving that the debt at issue arose from a separation or divorce. Once this burden has been established, however, the burden then shifts to the debtor who must establish her/his compliance with one of the two exceptions to nondischargeability set forth in § 523(a)(15): (1) the "ability to pay" test of § 523(a)(15)(A); or (2) the "balancing test" under § 523(a)(15)(B). With regards to these exceptions to nondischargeability, the Court will begin its analysis with the "ability to pay" test of § 523(a)(15)(A).

■ Under the "ability to pay" test of § 523(a)(15)(A), a court must first determine whether the debtor has a sufficient amount of disposable income available to pay the marital debt. *Miller v. Miller (In re Miller),* 247 B.R. 412, 415 (Bankr. N.D.Ohio 2000). For purposes of this test, disposable income may be defined as that income which is received by the debtor and which is not reasonably necessary to be expended for the support or maintenance of the debtor or for a dependant of the debtor. *Id.* In conducting this part of the analysis, the debtor's income is normally measured from the date of the trial; however, if the circumstances so warrant, a court may also look at the debtor's future earning potential as well as to other non-debtor wage earners residing within the debtor's household. *Crossett v. Windom (In re Windom),* 207 B.R. 1017, 1021 (Bankr.W.D.Tenn.1997); *In re Smither,* 194 B.R. 102, 108–09 (Bankr.W.D.Ky.1996). Thereafter, if the debtor is found to have some disposable income available, the Court must next determine, after considering the total amount of the indebtedness involved, whether the debtor can realistically pay the marital debt(s) within a reasonable amount of time. *Melton v. Melton (In re Melton),* 238 B.R. 686, 695 (Bankr.N.D.Ohio 1999).

■ In applying the first part of the "ability to pay" test to the case at hand, a court must begin by scrutinizing a debtor's enumerated expenses to ensure that they are reasonably necessary to be expended for his/her support and maintenance. With that principle in mind, certain monthly expenses of the Debtor do not seem reasonable under her present circumstances. In particular, Seven Hundred Forty dollars ($740.00) a month for food seems quite excessive for two people who, except for some periodic visits from their children, must only provide for themselves. In this regard, a significant portion of the Debtor's food expense seems to be the result of her and her husband dining out. No evidence, however, was introduced that showed that the Debtor or her husband have the type of job that requires frequent dining out; instead, the expenses the Debtor incurs in dining out seem to be

solely for entertainment purposes. As such, the Court, given that the Debtor is plainly ignoring those obligations which she agreed to undertake in her Divorce Decree, is not of the opinion that such a course of conduct is reasonable.

In addition to the Debtor's food expense, the Court also questions why the Debtor and her husband, when they are supposedly not meeting their monthly obligations, recently increased their rental payments to One Thousand dollars ($1000.00) per month. In this same regard, a Two Hundred dollar ($200.00) allotment for recreational expenses and a monthly payment of One Hundred Twenty-seven dollars ($127.00) for a cell phone do not seem necessary. In addition, many of the Debtor's other expenses seem to be either unnecessary or overinflated; a conclusion which the Debtor and her husband have, in effect, agreed to when one considers that based upon their claimed expenses, both the Debtor and her husband show a significant monthly shortfall: Six Hundred Forty-four and 77/100 dollars ($644.77) for the Debtor; and Two Hundred Thirty-nine dollars ($239.00) for the Debtor's husband.

■ Thus, based upon the foregoing observations, the Court finds that the following expenses are reasonable for purposes of § 523(a)(15)(A):

| | Debtor | Spouse |
|---|---|---|
| Rent | $ 350.00 | $ 350.00 |
| Electric and Heating Fuel | $ 135.00 | |
| Water and Sewer | $ 25.00 | |
| Telephone | $ 40.00 | |
| Cable | $ 40.00 | |
| Cell Phone | $ 00.00 | $ 00.00 |
| Medical/Dental Expenses | $ 90.00 | $ 100.00 |
| Food | $ 200.00 | $ 200.00 |
| Clothing | $ 25.00 | $ 25.00 |
| Laundry/Dry Cleaning | $ 10.00 | |
| Transportation | $ 100.00 | $ 145.00 |
| Recreation | $ 50.00 | $ 50.00 |
| Charitable Contributions | $ 00.00 | |
| 401K @ 3% of gross income | $ 00.00 | |
| Health Insurance | $ 122.81 | |
| Auto Insurance | $ 47.00 | $ 47.00 |
| Installment Payments | | $ 320.00 |
| Miscellaneous Credit Cards | $ 00.00 | $ 80.00 |
| Child Support | $ 683.48 | $ 860.00 |
| Total Individual Monthly Expenses | $1,918.29 | $2,177.00 |

Accordingly, based upon these revised expenses, the Court finds that the Debtor, having Two Thousand One Hundred Seventy-six and 25/100 dollars ($2,176.25) in monthly income, has a monthly disposable income of Two Hundred Fifty-seven and 96/100 dollars ($257.96). Similarly, the Debtor's husband, having a monthly income of Two Thousand Two Hundred Seventy-five dollars ($2,275.00), has Ninety-eight dollars ($98.00) per month in available disposable income. Based upon these figures, the Court now turns to address whether the Debtor, based upon her disposable income figure, has a sufficient amount of "disposable income" available to pay her marital debt within a reasonable amount of time. *In re Windom,* 207 B.R. at 1021. In making this determination, however, the Court will not utilize, in full, the Debtor's potential disposable income because, as this Court has held in the past, unexpected expenses such as car repairs may arise. *In re Perkins,* 221 B.R. at 190.

■ As stated above, the Debtor has Two Hundred Fifty-seven and 96/100 dollars ($257.96) per month in disposable income. Of this amount, it seems reasonable, even after considering unexpected expenses, to allot One Hundred Fifty dollars ($150.00) toward the repayment of the Debtor's marital debt. Such an amount then, if paid every month, would eliminate the Debtor's marital obligation in approximately five years. For purposes

§ 523(a)(15)(A), a five-year payment period is without doubt a reasonable period in which to repay a marital debt. In fact, this Court has, without hesitation, approved longer periods of time for the repayment of a marital debt. For example, in *Koenig v. Koenig (In re Koenig)*, the Court approved a repayment period of approximately 8½ years. 265 B.R. 772, 776 (Bankr.N.D.Ohio 2001). Moreover, the Bankruptcy Code itself, in a Chapter 13 case, contemplates a repayment schedule of up to five years. 11 U.S.C. § 1322(d). Accordingly, as the Debtor has a sufficient amount of disposable income to pay her marital debt in a reasonable period of time, the Court cannot find that the Debtor has met her burden with respect to the "ability to pay" test of § 523(a)(15)(A). Thus, the Court will now proceed to examine whether the Debtor is qualified for a discharge of this debt under subparagraph (B) of § 523(a)(15).

■ Section 523(a)(15)(B), which is commonly referred to as the "balancing test," provides that a debtor/spouse is entitled to receive a discharge of a marital debt if discharging the debt would result in a benefit to the debtor which outweighs the detrimental consequences to the debtor's former spouse or children. In past instances, this Court has held that the best way to apply this statutory balancing test is for a court to review the financial status of the debtor and the creditor, and then to compare their relative standards of living to determine the true benefit of the debtor's possible discharge against the hardship the creditor would suffer as a result of the debtor's discharge. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 191 (Bankr.N.D.Ohio 1998). Stated differently, if it is determined that the debtor's standard of living will fall considerably below that of the creditor's if the debt is not discharged, then the debt must be discharged under § 523(a)(15)(B). *In re Molino*, 225 B.R. at 908–09.

■ As applied to this case, the Court begins by observing that, although some of the Plaintiffs' expenses do seem a little high (e.g., a truck payment of $489.95), there is nothing to suggest that such expenses are either extravagant or unnecessary. Moreover, it is apparent that the Plaintiff, as the residential parent of the Parties' minor children, incurs significant expenses as a result of this arrangement— e.g., daycare and tuition expenses. The Plaintiff, however, based upon his enumerated expenses as they relate to his income (which includes overtime pay that may or may not be available in the future), has absolutely no disposable income available. In fact, the Plaintiff, in order to meet his monthly expenses, is presently having to deplete all of his assets. By comparison, the Court has already established that the Debtor has approximately Two Hundred Fifty dollars ($250.00) per month in disposable income. Thus, based upon this fact, alone, the Court is not convinced that discharging the debt at issue would result in a benefit to the Debtor which would outweigh the detrimental consequences to the Plaintiff and his children. However, further reinforcing this position is this simple fact: a review of the Debtor's claimed expenses show that instead of paying her martial obligations, the Debtor has incurred expenses for luxury items and services such as getting her nails manicured and incurring significant cell-phone expenses. The Bankruptcy Code, of course, simply does not permit such conduct. Accordingly, for these reasons, the Court is not persuaded that the Debtor has met her burden with respect to paragraph (B) of § 523(a)(15).

In summation, the Court cannot find that the Debtor has sustained her burden under either of the exceptions to nondis-

chargeability contained in § 523(a)(15). Therefore, the Court must find that the credit card obligation the Debtor was ordered to assumed in the Parties' decree of divorce is a nondischargeable debt for purposes of bankruptcy law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the legal obligation of the Defendant, Janice M. Erd, to the Plaintiff, Ronald T. Erd, regarding the Standard Federal/MBNA credit card (Account Number 4264–2980–6005–5863), be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(15).