**In re Nicholaus STOODT, Debtor.**

**Amy Biederman, Plaintiff,**

**v.**

**Nicholaus Stoodt, Defendant.**

**No. 01–3048.**

United States Bankruptcy Court,
N.D. Ohio.

Aug. 21, 2003.

Randy Lee Reeves, Lima, OH, for plaintiff.

William B Balyeat, Lima, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before this Court after a Trial upon the Plaintiff's Complaint to Determine the Dischargeability of a marital debt. The Plaintiff's Complaint is brought pursuant to 11 U.S.C. § 523(a)(15) which generally excepts from discharge those debts which, although not in the nature of support, arise from a separation or divorce. The specific marital obligation at issue in this case concerns the Debtor/Defendant's assumption of the indebtedness associated with the Parties' former marital residence which, although not liquidated at the time of the Trial, was later determined to be Fifteen Thousand Seven Hundred Ninety-three and 24/100 dollars ($15,793.24). (Doc. No. 29). The Court has now had the opportunity to review all of the arguments of counsel, the evidence presented at Trial, as well as the entire record of this case. Based upon that review, and for the following reasons, the Court finds that the Debtor's obligation to pay the indebtedness associated with the Parties' former marital residence is a nondischargeable debt.

## FACTS

Nicholaus Stoodt, the Defendant/Debtor in this action (hereinafter the "Debtor") is 29 years of age, and from all appearances is in good health. On October 28, 1996, a decree of divorce was entered terminating the marriage between the Plaintiff, Amy Biederman (hereinafter the "Plaintiff"), and the Debtor. As a part of their divorce decree, the Plaintiff was designated as the residential parent and legal custodian of the Parties' minor child, Erika. In turn, the Debtor was ordered to pay child support in the amount of Four Hundred Thirty-eight and 68/100 dollars ($438.68) per month, which, through a subsequent court order, was lowered to Three Hundred Thirty-two dollars ($332.00) per month.

In addition, and at the heart of the instant matter, the Parties' divorce decree awarded sole ownership of the Parties' marital residence to the Debtor. In exchange, the Debtor was required to assume and hold the Plaintiff harmless on the mortgage obligation associated with the property. Since July of 2000, however, the Debtor has failed to comply with this obligation, thereafter physically vacating the premises in October of 2000.

On November 29, 2000, the Debtor, together with his new wife, Tabatha, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. As a part of their bankruptcy case, the Debtor surrendered the Parties' former marital residence to the mortgagee. On October 24, 2002, the Plaintiff brought an action pursuant to 11 U.S.C. § 523(a)(15) seeking to except from discharge any potential deficiency, for which she would be liable, if the sale of the property was insufficient to cover the mortgage obligation. However, at the time of the Trial held on this matter, and for reasons which are not entirely clear,

the property had not yet been sold despite the passage of a significant period of time; as a result, the Court deferred rendering a decision in this matter until the amount of the deficiency, if any, had been liquidated. On May 27, 2003, it was submitted to the Court that the property had been recently sold for Sixty Thousand dollars ($60,000.00), leaving a deficiency, after factoring in accrued arrearages, of Fifteen Thousand Seven Hundred Ninety-three and 24/100 dollars ($15,793.24); a judgment on this deficiency was shortly thereafter granted in favor of the mortgagee. (Doc. No. 29). As it concerns this deficiency judgment, and its applicability to the Plaintiff's causes of action under § 523(a)(15), the following information relevant to both of the Parties' financial situation was submitted to the Court.

The Debtor and his wife, Tabatha, have three children residing in their household: Kirsten, age six, who is the Debtor's stepdaughter and for whom Tabatha receives Eighty-four dollars ($84.00) per month in support payments; Seth, age two; and Leah, age six months. With respect to their household finances, it was set forth by the Debtor that he and his wife, after factoring in a child support payment of Four Hundred Thirty-eight and 68/100 dollars ($438.68), along with other mandatory deductions, have a combined net monthly income of One Thousand Five Hundred Two dollars and 98/100 dollars ($1,502.98) per month. In addition to this income, the evidence presented revealed that in the past the Debtor's income has been supplemented by two additional sources: (1) federal and state tax refunds which for the tax year 2001 totaled Two Thousand Seven Hundred Ninety-one dollars ($2,791.00); and (2) the closing, in June of 2002, of an IRA account maintained with a former employer, which resulted in the Debtor receiving approximately Fifteen Thousand dollars ($15,000.00) after accounting for taxes and penalties. As it pertains to these funds, the Debtor explained that his recent tax refund was utilized to pay late child support payments for his daughter, Erika; while the funds received from his IRA account were used to pay debts to family members and friends, as well as indebtedness that had accrued on an automobile.

In terms of monthly expenses, the Debtor submitted that he and his wife have the following necessary monthly expenditures:

| | |
|---|---|
| $ 679.00 | Rent |
| $ 209.00 | Heat and Electric |
| $ 19.50 | Water |
| $ 57.41 | Telephone |
| $ 59.57 | Cable/Trash |
| $ 45.00 | Food |
| $ 120.00 | Clothing |
| $ 45.00 | Medical/Dental |
| $ 140.00 | Transportation |
| $ 30.00 | Home Insurance |
| $ 70.00 | Auto Insurance |
| $1,474.48 | Total Monthly Expenditures |

As for the Plaintiff's financial situation, the evidence in this case revealed that she is currently employed as a medical office assistant, while her current husband is employed as a fire fighter. In these lines of employment, the Plaintiff submitted that she and her husband have a combined net monthly income of Two Thousand Eight Hundred Nine and 14/100 dollars ($2,809.14), while they put forth evidence that their reasonable monthly expenditures are Two Thousand Seven Hundred Fourteen and 19/100 dollars ($2,714.19). However, as it pertains to her income, the Plaintiff brought to the Court's attention that for an indeterminate amount of time, her income will, on account of the impending birth of her child, likely be cut in half.

### LAW

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section

does not discharge an individual debtor from any debt–

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a government unit unless–

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### *DISCUSSION*

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Thus, this case is a core proceeding.

■ The statutory basis for the Plaintiff's compliant to determine dischargeability rests entirely upon the exception to discharge contained in § 523(a)(15) of the Bankruptcy Code. Under this section, any debts which are incurred by a debtor during the course of a separation or divorce or under a separation agreement or court order, and which do not otherwise fall under the exception to discharge contained in 11 U.S.C. § 523(a)(5), are excepted from a bankruptcy discharge. However, in an effort to further the fresh-start policy of the Bankruptcy Code, the breadth of § 523(a)(15) is limited in two important aspects. First, a marital debt subject to § 523(a)(15) will still be dischargeable if the debtor does not have the "ability to pay" the marital debt. 11 U.S.C. § 523(a)(15)(A). In addition, a marital debt may also be discharged if, on balance, the benefit of discharging the debt "outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]" 11 U.S.C. § 523(a)(15)(B).

■ With respect to an action brought under § 523(a)(15), the plaintiff bears the initial burden of proving that the debt at issue arose from a separation or divorce. Once this burden has been established, however, the burden then shifts to the defendant who must demonstrate, by a preponderance of the evidence, his or her compliance with one of the two limitations to nondischargeability set forth in § 523(a)(15). *See Erd v. Erd (In re Erd)*, 282 B.R. 620, 625 (Bankr.N.D.Ohio 2002). In applying this standard to this case, there is no dispute between the Parties that the Debtor was ordered, pursuant to the Parties' decree of divorce, to assume and hold the Plaintiff harmless on the mortgage obligation. Consequently, the Court will confine its discussion to whether the Debtor has met his burden under either paragraph (A) or (B) of § 523(a)(15).

### Section 523(a)(2)(A)

■ Under the first exception to nondischargeability set forth in paragraph (A) of § 523(a)(15), it is provided that a debtor is entitled to a discharge of a marital obligation if he or she "does not have the ability to pay such debt from income or property ... not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the

debtor ...[.]" Pursuant to this language, any analysis under this section, which is known as the "ability to pay" test, requires that an initial determination be made concerning the extent to which, if any, a debtor's income (also taking into consideration the extent of the debtor's property) exceeds the debtor's reasonable expenses. Thereafter, if it determined that funds are available to pay the debt, it must then be decided whether the utilization of such funds would enable the debtor to pay the debt within a reasonable amount of time. *Bubp v. Romer (In re Romer),* 254 B.R. 207, 212 (Bankr.N.D.Ohio 2000).

■ In determining the extent to which a debtor's income exceeds the debtor's expenses, this Court has followed, as have other bankruptcy courts, the "disposable income" test of 1325(b)(2) (which is utilized to determine how much income a debtor must devote toward a Chapter 13 repayment plan) as the language of this section mirrors the "ability to pay" language of 523(a)(15)(A). *Miller v. Miller (In re Miller),* 247 B.R. 412, 414 (Bankr.N.D.Ohio 2000); *Spiezio v. Vitek (In re Vitek),* 271 B.R. 551, 560 (Bankr.S.D.Ohio 2001). As it pertains to this Test, the Debtor wishes the Court to adopt those figures which show that he, along with his wife, only has about Twenty-five dollars ($25.00) per month in disposable income. However, from even an initial standpoint, there are clearly a couple of inaccuracies with the disposable income figure put forth by the Debtor.

■ To begin with, the disposable income figure put forth by the Debtor does not take into account the approximately One Hundred dollar ($100.00) per month decrease he received on his child support obligation. Additionally, the Eighty-four dollars ($84.00) per month the Debtor's wife receives for child support was not included in the disposable income figure

put forth by the Debtor. As it pertains to the latter, it is noted that not in all circumstances is it proper to utilize the income and expense figures of a debtor's spouse, as well as those expense figures of that spouse's dependent(s) for which the debtor is not liable. Rather, the income and expenses of the debtor's spouse, as well as those expenses of that spouse's dependents, should only be utilized if they are sufficiently intertwined with the debtor's income and expenses so as to make segregating the figures both impractical and unfair. *Accord Miller v. Miller (In re Miller),* 247 B.R. 412, 415 (Bankr.N.D.Ohio 2000). Factors to consider in this regard, all of which in this case are favorable for commingling the income and expenses of both the Debtor and his spouse, are, (1) whether the debtor and the spouse are living together, (2) whether the debtor and the spouse filed bankruptcy jointly, (3) the age and needs of the spouse's dependents, and (4) whether the consideration of such income and expenses is fair to the other spouse.

■ Beyond the above adjustments, the disposable income test of § 1325(b)(2) also requires that a court take steps to ensure that a debtor's enumerated income and expenses are reasonable, and then to make changes where appropriate. *In re Gonzales,* 157 B.R. 604, 607–08 (Bankr. E.D.Mich.1993). In determining whether and the extent to which an adjustment should be made, the disposable income test of § 1325(b)(2) requires that a court take into account all relevant circumstances, while keeping in mind a couple of related principles. First, income may be imputed to a debtor if, for example, it is found that the debtor has become voluntarily underemployed, if the debtor is not earning up to their full potential within their occupational profile, or if it looks as if the future earning potential of the debtor will likely

improve. *See Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir.BAP1998); *Burton v. Burton (In re Burton)*, 242 B.R. 674, 682 (Bankr.W.D.Mo.1999). Second, as it pertains to expenses, a debtor, although not expected to live in poverty, is expected to tighten their financial belt, and thus do without many amenities to which they may have otherwise become accustomed. *In re Bottelberghe*, 253 B.R. 256, 263 (Bankr. D.Minn.2000).

 With respect to the above principles, the Court has a few additional concerns as it relates to the income and expense figures put forth by the Debtor. First, the Debtor listed that he and his wife only spend Forty-five dollars ($45.00) per month for food. Obviously, such a figure is inaccurate considering that there are five people residing in the Debtor's household. As such, it would strongly appear that the Debtor either understated his income and/or has an additional source of income which, in turn, raises a serious question as to the accuracy of all of the income and expense figures put forth by the Debtor. In this regard, no matter the source of any income—e.g., government assistance, help from family members and/or friends—it must be reported.

Second, it is noted that if the past is any indicator, the Debtor's income will likely be supplemented by the funds he receives in the form of a tax refund. As it relates to this observation, this Court has stated that in determining a debtor's ability to pay under § 523(a)(15)(A) it "will not permit a party to conceal otherwise available income by that party simply making an overpayment to the IRS." *Smith v. Shurelds (In re Shurelds)*, 276 B.R. 803, 809 (Bankr.N.D.Ohio 2001). Similarly, it was this Court's impression that the Debtor is both intelligent and ambitious. Thus, although presently experiencing some tough financial conditions, there is no reason to suspect that the Debtor's financial condition will not significantly improve in the future.

Finally, § 523(a)(15)(A), by specifically providing that a court is to take into account the extent of a debtor's property, does not permit a debtor to deplete their assets to the detriment of his or her marital obligations. In this case, however, this is exactly what the Debtor did: After receiving Fifteen Thousand dollars ($15,000.00) through the closing of an IRA account, the Debtor, despite paying other debts, failed to make any sort of remuneration on his marital obligation. In making this statement, the Court is not implying that the Debtor was wrong in using his assets to pay otherwise legitimate debts. However, what is unacceptable is that the Debtor completely discounted his martial obligation despite having resources available to make payments on the obligation. Accordingly, since at least a portion of those funds received from the Debtor's IRA account should have gone to mitigate against the arrearages that were accruing on the Parties' former marital residence, the amount of the deficiency at issue in this case should be set at a lower amount.[1]

Thus, for the above reasons, the Court is convinced that the Debtor's disposable income should be set at an amount appreciably higher than the de minimis figure originally put forth. Similarly, given the Debtor's failure to make any payments on the martial debt, when he had the ability to do so, the amount of this debt should be set at an amount appreciably lower than the Fifteen Thousand dollar ($15,000.00)

---

1. In addition, and although not privy to all of the relevant information regarding the mortgagee's foreclosure, it would appear to the Court that the Debtor could have contested the deficiency on the grounds that it was not timely prosecuted.

figure put forth by the Debtor. Thus, given these considerations, it is apparent that, although the evidence in this case does not lend itself to setting an exact dollar amount, the Debtor has the "ability to pay" the marital debt at issue within a reasonable amount of time. Accordingly, the Debtor is not entitled to receive a discharge of this marital debt pursuant to § 523(a)(15)(A).

### Section 523(a)(2)(B)

█ The next issue to address is whether the Debtor is entitled to receive a discharge of the deficiency judgment under § 523(a)(15)(B). Under this section, a debtor is entitled to receive a discharge of a marital debt if the benefit to the debtor in discharging that debt outweighs the detrimental consequences the discharge will have on the former spouse. In conducting an analysis under this section, this Court has applied what has become to be known as the "standard of living" test. *Melton v. Melton (In re Melton)*, 238 B.R. 686, 695 (Bankr.N.D.Ohio 1999).

█ Under the "standard of living" test, a court begins by making a comparison between each parties' respective standard of living. In determining the standard of living of each of the parties, all relevant circumstances should be taken into account, with some of the most important considerations involving each of the parties' current income, expenses and available assets. *In re Molino*, 225 B.R. at 909. Also of significance, is whether either of the parties has incurred any expenses for luxury goods and services—e.g., vacations, boats, jewelry etc. If, after conducting this analysis, the court finds that with the marital debts not discharged, the debtor's standard of living will be greater than or approximately equal to the creditor's standard of living, then the debt should be found to be a nondischargeable obligation under § 523(a)(15)(B). Conversely, if the court concludes that the debtor's standard of living will fall materially below that of the creditor, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B). *Id.* at 908–09.

█ As applied to this case, the evidence presented revealed that neither of the Parties has a significant amount of assets; nor has either of the Parties recently engaged in any sort of frivolous spending. Similarly, neither of the Parties, after considering their reasonable monthly expenses, has a significant amount of excess income. Thus, on whole, the respective standards of living of each of the Parties is roughly equal. However, as just set forth above, in order to sustain a valid defense under § 523(a)(15)(B), a debtor is required to show more than just an approximate parity in the parties' respective standards of living. Instead, as exhibited by § 523(a)(15)(B)'s use of the word "outweighs,"something must tip the balance in the debtor's favor. In this case, however, just the opposition seems to be the case.

First, the Plaintiff is the residential parent of the Parties' minor child, which although not a dispositive consideration, is probative as to which party will be affected the greatest by the assumption of the marital debt. *Calabrese v. Calabrese (In re Calabrese)*, 277 B.R. 357, 363 (Bankr. N.D.Ohio 2002). Similarly, the evidence presented in this case shows that the Plaintiff's financial situation is likely to become even further strained in the future on account of the impending birth of her child. For example, it was brought to the Court's attention that, for an indeterminate period of time, the Plaintiff will be on maternity leave, and thus will not be entitled to receive full pay. Furthermore, it is likely that the Plaintiff, on account of the new child, will incur additional expenses. On the other hand, and as pointed out

before, there exists a good probability that the Debtor's financial condition will experience an improvement in the future. Thus, when all things are considered, the Court is unable to conclude that the debtor's standard of living will fall materially below that of the Plaintiff's standard of living if the debt is not discharged. Accordingly, the Debtor has not met his burden under paragraph (B) of § 523(a)(15).

In summation, the Court cannot find that the Debtor has sustained his burden under either of the exceptions to nondischargeability contained in 11 U.S.C. § 523(a)(15). Therefore, the Court must find that the deficiency judgment rendered on the mortgage obligation the Debtor was ordered to assume pursuant to the Parties' divorce decree is a nondischargeable debt for purposes of bankruptcy law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically mentioned in this Opinion.

Accordingly, it is

**ORDERED** that the obligation of the Debtor/Defendant, Nicholaus M. Stoodt, as set forth in the Parties' decree of divorce (Court of Common Pleas, Allen County, Ohio, Case No. DR96090468) to assume and pay all the mortgage indebtedness on the Parties' former marital residence, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(15).