**In re Scott MESSENGER, Debtor.**

**Robin Messenger, Plaintiff,**

**v.**

**Scott Messenger, Defendant.**

**Nos. 04–3455, 04–38535.**

United States Bankruptcy Court, N.D. Ohio.

July 8, 2005.

Patti Baumgartner-Novak, Findlay, OH, for debtor.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial upon the Plaintiff's Complaint to Determine the Dischargeability of a marital debt. The Plaintiff's Complaint is brought pursuant to 11 U.S.C. § 523(a)(15) which excepts from discharge those debts which, although not in the nature of support, arise from a separation or divorce. The specific marital obligation at issue in this case concerns the Debtor/Defendant's assumption of a credit-card debt to MBNA America Bank, N.A. in the amount of $14,514.42, plus accrued interest (Ex. B). The Court has now had the opportunity to review all of the arguments of counsel, the evidence presented at Trial, as well as the entire record of this case. Based upon that review, and for the following reasons, the Court finds that the Debtor's obligation to pay the MBNA credit-card debt is nondischargeable.

### FACTS

This case originates from a divorce that took place on October 14, 2003, between the Defendant, Scott A. Messenger (hereinafter the "Debtor"), and the Plaintiff, Robin L. Morgan, formerly Robin L. Messenger (hereinafter the "Plaintiff"). According to their Separation Agreement, which was later incorporated into the Parties' Divorce Decree, the Debtor was to pay and hold the Plaintiff harmless on certain debts, including a MBNA joint credit-card debt. Under this Agreement, the Defendant was to have Plaintiff's liability on the credit card removed within 60 days of the filing of the Divorce Decree between the Parties. The last day of that sixty day period was December 14, 2004.

However, since the entry of the Parties' Divorce Decree, the Debtor has not made any payments on his MBNA credit card obligation. Additionally, the Debtor was required to fill out and send a form to MBNA that would have requested that the Plaintiff be removed from any personal liability on the debt; however, the Debtor did not send in this form. On September 7, 2004, the Plaintiff filed a motion for contempt in domestic relations court on grounds of Debtor's nonpayment of the MBNA debt and on Debtor's refusal to have indebtedness removed from Plaintiff's name (Ex. C). MBNA has since com-

menced legal action against the Plaintiff to collect on the debt (Ex. B).

On October 11, 2004, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff is listed in the petition as one of the Debtor's creditors. The Plaintiff later filed a complaint against the Debtor pursuant to 11 U.S.C. § 523(a)(15) seeking to except the Debtor's liability to assume the MBNA debt from discharge. In response, the Debtor asserts that the debt should be discharged under the exceptions to nondischargeability set forth in § 523(a)(15).

On the issue of the dischargeability of the credit-card debt, the Parties each presented evidence with respect to their financial conditions. The Debtor submitted the following itemized list of his monthly expenses:

| Rent | $ 525.00 |
|---|---|
| Utilities: | |
| Electricity and Heating Fuel | $ 120.00 |
| Water and Sewer | $ 55.00 |
| Telephone | $ 60.00 |
| Cable | $ 40.00 |
| Home Maintenance | $ 10.00 |
| Food | $ 400.00 |
| Clothing | $ 50.00 |
| Medical/Dental | $ 10.00 |
| Transportation | $ 130.00 |
| Recreation | $ 50.00 |
| Auto Insurance | $ 40.00 |
| Total | $1,490.00 |

The Debtor has also indicated that he and his girlfriend are expecting the birth of a child, and for this reason, the Debtor stated that his future child care expenses are uncertain.

In terms of income, it was revealed that the Debtor has been employed for the past three years as a factory worker and currently earns $13.25 per hour. The Debtor also estimates that he works an average of two overtime hours per week, although he stated at trial that he is uncertain whether he will be able to work as many overtime hours in the future. At his present hourly rate, including overtime pay, the Debtor currently earns approximately $30,000 per year. Thus on a monthly basis, after accounting for his mandatory deductions, the figures put forth by the Debtor show that he has an average net income of approximately $1,900.00, thereby leaving him with a claimed monthly disposable income of about $450.00.

As it pertains to the Plaintiff's financial situation, the facts of this case reveal that the Plaintiff was awarded the Parties' marital residence, which has an approximate value of $78,000.00. The Plaintiff does not appear to have any significant equity in the house. Based upon her 2004 tax return, the Plaintiff, an open-heart surgery nurse, earns approximately $46,000.00 per year, or approximately $3,000.00 net income per month. The Plaintiff, however, testified that her monthly income varies due to the fact that there are periods of time when no work is available.

On the other side of the equation, the Plaintiff claims reasonable monthly expenses totaling $3,335.28. These expenses include monthly child support payments of $546.00 for two of her children, who reside with her for two weeks out of each month under a shared custody plan with the children's father. The Debtor is not the father of the children. The Plaintiff's expenses also include but are not limited to a car payment in the amount of $500.00 per month, as well as payments on a 1996 Chevy S–10 pick-up truck in the amount of $147.00 per month. The truck payments, like the MBNA credit card payments, were assigned to the Debtor under the terms of the Separation Agreement. The Debtor, however, surrendered ownership of the truck to the Plaintiff after the truck stopped running, leaving the Plaintiff to assume the payments. Based on her annual income, the Plaintiff shows an average monthly net income of approximately

$3,000.00 The Plaintiff claims, based upon these figures, that her monthly expenses exceed her monthly income, thereby leaving her with no disposable income.

### LAW

### 11 U.S.C. § 523. Exceptions to Discharge

Section 523(a)(15) of the Bankruptcy Code provides:

A discharge under § 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court record, a determination made in accordance with the State or territorial law by a government unit unless-

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### DISCUSSION

Proceedings brought pursuant to § 523(a)(15) to determine the dischargeability of a debt are core proceedings over which the Court has the authority to enter final judgments and orders. 28 U.S.C. § 157(b)(2)(I).

The statutory basis for the Plaintiff's Complaint to Determine Dischargeability rests upon the exception to discharge contained within § 523(a)(5) of the Bankruptcy Code. Under this section, any debts that are incurred by a debtor during the course of a separation or divorce or under a separation agreement or court order, which do not otherwise fall within the exception to discharge contained within § 523(a)(5), are excluded from the scope of a bankruptcy discharge. *In re Henderson*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr. N.D.Ohio 1998). With respect to this section, the plaintiff bears the initial burden of proving that the debt at issue arose from a separation or divorce. In this case, the Parties do not contest that the MBNA debt arose from their divorce. Next, the burden shifts to the debtor, who must establish that one of the two exceptions to nondischargeability set forth in § 523(a)(15) is applicable. The two exceptions are (1) the "ability to pay" test of § 523(a)(15)(A); and (2) the "balancing test" under § 523(a)(15)(B). With regards to these exceptions to nondischargeability, the Court will begin its analysis with the "ability to pay" test of § 523(a)(15)(A).

Under the first exception to nondischargeability set forth in paragraph (A) of § 523(a)(15), it is provided that a debtor is entitled to a discharge of a marital obligation if he or she does not have the ability to pay such debt from income or property not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Biederman v. Stoodt (In re Stoodt)*, 302 B.R. 549, 556 (Bankr.D.Ohio 2003). Pursuant to this language, any analysis under this section, which is known as the "ability

to pay" test, requires that an initial determination be made concerning the extent to which, if any, a debtor's income (also taking into consideration the extent of the debtor's property) exceeds the debtor's reasonable expenses. *Id.* Thereafter, if it is determined that funds are available to pay the debt, it must then be decided whether the utilization of such funds would enable the debtor to pay the debt within a reasonable amount of time. *Id.*

Under the "ability to pay" test, a court must first determine whether the debtor has a sufficient amount of disposable income available to pay the marital debt. *Miller v. Miller (In re Miller),* 247 B.R. 412, 415 (Bankr.N.D.Ohio 2000). For purposes of this test, disposable income may be defined as "that income which is received by the debtor and which is not reasonably necessary to be expended for the purpose or maintenance of the debtor or for a dependant of the debtor." *Id.* In conducting this part of the analysis, the debtor's income is normally measured from the date of the trial; however, if the circumstances so warrant, a court may also look at the debtor's future earning potential as well as to the income of other non-debtor wage earners residing within the debtor's household. *Crossett v. Windom (In re Windom),* 207 B.R. 1017, 1021 (Bankr.W.D.Tenn.1997); *In re Smither,* 194 B.R. 102, 108–09 (Bankr.W.D.Ky.1996). Thereafter, if the debtor is found to have some disposable income available, the Court must next determine, after considering the total amount of the indebtedness involved, whether the debtor can realistically pay the marital debt(s) within a reasonable amount of time. *Melton v. Melton (in re Melton),* 238 B.R. 686, 695 (Bankr.N.D.Ohio 1999).

In applying the first part of the "ability to pay" test to the case at hand, a court must begin by scrutinizing a debtor's enumerated expenses to ensure that they are reasonably necessary to be expended for support and maintenance. With that principle in mind, certain monthly expenses of the Debtor do not seem reasonable under his present circumstances. In particular, $400 a month for food seems excessive for one person who, except for some periodic visits from his son, must only provide for himself at the present time. As such, the Court, given that the Debtor is not making payments on financial obligations which he agreed to undertake in his Separation Agreement, is not of the opinion that this level of spending for food is reasonable.

In addition to the Debtor's food expense, the Court also questions why the Debtor, who is not meeting his monthly financial obligations, is spending $50 monthly on recreation, $40 on cable, and $50 on clothing. These expenses are higher than necessary. Thus, based upon all of the foregoing observations, the Court finds that the following expenses are reasonable for purposes of § 523(a)(15)(A):

| | |
|---|---|
| Rent | $ 525.00 |
| Utilities: | |
|    Electricity and Heating Fuel | $ 120.00 |
|    Water and Sewer | $ 55.00 |
|    Telephone | $ 60.00 |
|    Cable and Recreation | $ 50.00 |
|    Home Maintenance | $ 10.00 |
| Food | $ 300.00 |
| Clothing | $ 25.00 |
| Medical/Dental | $ 10.00 |
| Transportation | $ 130.00 |
| Auto Insurance | $ 40.00 |
| Total | $1,325.00 |

Applying these revised figures, the Court finds that the Debtor, having approximately $2,000.00 of monthly income, has a monthly disposable income of about $600.00. This total is greater than the $450.00 that the Debtor claims for his disposable income. Based upon these revised figures, the Court now turns to address whether the Debtor has a sufficient

amount of disposable income available to pay this debt within a reasonable amount of time. *In re Windom*, 207 B.R. at 1021. In making this determination, however, the Court is mindful of the fact that unexpected expenses such as car repairs may arise; thus the Court will not use the Debtor's full potential disposable income. *See In re Perkins*, 221 B.R. at 190.

As stated above, the Debtor has approximately $600.00 of disposable income per month. Of this amount, it seems reasonable, even after considering unexpected expenses, to allot $400.00 toward the repayment of the credit-card debt. Such an amount then, if paid every month, would eliminate the Debtor's marital obligation in less than five years. For purposes of § 523(a)(15)(A), a five-year payment period is a reasonable period in which to repay a marital debt. In fact, this Court has approved longer periods of time for the repayment of an unsecured marital debt. For example, in *Koenig v. Koenig, (In re Koenig)*, the Court approved a repayment period of approximately 8½ years 265 B.R. 772, 776 (Bankr. N.D.Ohio 2001). Moreover, the Bankruptcy Code itself, in a Chapter 13 case, contemplates a repayment schedule of up to five years. 11 U.S.C. § 1322(d).

With respect to the stability of the Debtor's income, he is relatively young and appears to be in good health, and no evidence was introduced to suggest that he is suffering from any ailment, sickness, or injury. Thus, there appears to be no reason why the Debtor cannot maintain his current level of income in the future. Based then upon these considerations, the Court finds that the Debtor has a sufficient amount of disposable income to pay his marital debt within a reasonable period of time. Accordingly, the Debtor has not met his burden with respect to the "ability to pay" test of § 523(a)(15)(A). The Court

will now proceed to examine whether the Debtor is qualified for a discharge of his marital debt under subparagraph (B) of § 523(a)(15).

Section 523(a)(15)(B), which is commonly referred to as the "balancing test," provides that a debtor is entitled to receive a discharge of a marital debt if discharging the debt would result in a benefit to the debtor which outweighs the detrimental consequences to the debtor's former spouse or children. In past instances, this Court has held that the best way to apply this statutory balancing test is for a court to review the financial status of the debtor and the creditor, and then to compare their relative standards of living to determine the true benefit of the debtor's possible discharge against the hardship the creditor would suffer as a result of the debtor's discharge. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 191 (Bankr.N.D.Ohio 1998). Stated differently, if it is determined that the debtor's standard of living will fall considerably below that of the creditor's if the debt is not discharged, then the debt must be discharged under § 523(a)(15)(B). *In re Molino*, 225 B.R. at 908–09. In determining the standard of living of each of the parties, the Court takes all relevant circumstances into account, including the parties' current income, expenses and available assets. *Id.*

As applied to this case, the Court begins by observing that, although some of the Plaintiff's expenses do seem a little high (e.g., car payment of $500.00), there is nothing to suggest that such expenses are either extravagant or unnecessary. Moreover, the burden with respect to the balancing of hardships is not upon the Plaintiff, but the Debtor in the present case. *See, In re Florio*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995) (equity weighs against discharge where the debtor has

the ability to pay a debt under § 523(a)(15)). In addition, it is apparent that the Plaintiff, who has the financial responsibility of two minor children, incurs significant expenses as a result of her childcare expenses. For example, the Plaintiff makes monthly child support payments, and she must also cover the living expenses (e.g. food, utilities) incurred by the children during the two weeks of each month when they reside with her. As for assets, the Plaintiff does not appear to own any property of significant value that could be used to repay the MBNA debt. As discussed earlier, the Plaintiff's home is worth approximately $78,000.00, and she does not appear to have any significant equity in the property. The Plaintiff also does not appear to have any other assets that could be used for repayment of the debt.

Still, it cannot be ignored that the Plaintiff's fiancé presently assists in the payment of some of her household expenses, and her employer assists in the payment of certain job-related expenses (e.g. gasoline). The record does not indicate just how much financial assistance the Plaintiff's fiancé provides, nor is it clear what percentage of the household expenses are incurred by the Plaintiff's fiancé. However, the Plaintiff's fiancé presumably has his own expenses and he is under no legal obligation to contribute for the expenses of the Plaintiff and her children. Even with these additional means, the Plaintiff's resources still only appear to be about equal to her living expenses. Consequently, even if the Plaintiff could find ways to reduce her expenses, it is unlikely that they would be so reduced as to leave the Plaintiff with the Debtor's level of monthly disposable income. By the Debtor's own account, he has at least $450.00 of disposable income; this is $450.00 more disposable income than the Plaintiff presently has after paying her monthly expenses.

The Court is mindful that the Debtor may have childcare expenses in the near future. However, the Court is unwilling to include the Debtor's future childcare expenses into the figures for the present case because such conditions were not present at the time that the marital debts were allocated to the Parties under the terms of the Separation Agreement. The balancing test of § 523(a)(15)(B) is, at its heart, a test of fairness; thus in the present case, principles of equity come into play. As indicated during the Trial, the parties each previously assumed an equal proportion of marital debt, approximately $11,000.00 each, under the terms of their Separation Agreement. The Plaintiff has apparently maintained her end of this agreement by making payments on her portion of the marital debts. The Debtor, however, has not honored his agreement to pay his half of the marital debts; first, he stopped making payments on the truck debt when the truck stopped running, leaving the Plaintiff with the truck payments and repair expenses.

In summation, the Court cannot find that the Debtor has sustained his burden under either of the exceptions to nondischargeability contained in § 523(a)(15). Therefore, the Court must find that the MBNA credit-card debt that the Debtor was ordered to assume pursuant to the Parties' Divorce Decree is a nondischargeable debt for the purposes of bankruptcy law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, as well as the testimony and demeanor of all involved Parties, regardless of whether or not they are specifically mentioned in the Opinion.

Accordingly, it is

**ORDERED** that the MBNA credit card obligation that the Debtor, Scott Messen-

ger, was required to assume as a part of the divorce decree with the Plaintiff, Robin Morgan, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(15).